[No. C028605. Third Dist. July 23, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
KRISTEL MARIE HART, Defendant and Appellant.

## COUNSEL

Rose E. Mohan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson, Michael J. Weinberger and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, Acting P. J.**—The defendant parked her van in a residential area in the middle of the night, purportedly for a tryst with a man where they would not be seen together. Advised by a resident of the van's suspicious presence in the neighborhood, a sheriff's deputy contacted the couple. After detaining the claimed trysters, the deputy searched the defendant's purse, left in the van, for her identification. While the California identification card in the purse identified her, the methamphetamine therein incriminated her. A jury found her guilty of possession of a controlled substance.

On appeal, the defendant asserts the methamphetamine should have been excluded as the fruit of an illegal search. We conclude she failed to preserve this issue for appeal because she did not raise it at trial. We also conclude trial counsel was not ineffective for not preserving the issue for review because the search for identification was justified by the important and legitimate governmental interest of officer safety.

### PROCEDURE

The defendant was charged by complaint with possession of a controlled substance. A preliminary hearing was held before James T. Ford, "Judge of the Sacramento Municipal and Superior Court, . . . sitting . . . as a committing magistrate." During the hearing, the defendant moved to suppress the

evidence obtained in the search of the van. Judge Ford denied the motion by minute order.

The matter went to trial by jury before Lloyd G. Connelly, judge of the Sacramento Superior and Municipal Court, during which the defendant did not renew her motion to suppress the evidence. The jury found the defendant guilty of possession of a controlled substance, and the trial court suspended imposition of sentence and placed the defendant on probation with the condition, among others, that she serve 15 days in county jail and 105 days on sheriff's work project or work furlough.

### FACTS FROM THE PRELIMINARY HEARING

Since the defendant does not take issue with the trial proceedings, it is unnecessary to recount those proceedings during which the prosecution proved the defendant's crime with ample evidence. It cannot be disputed, however, that the evidence would have been insufficient to sustain a conviction if the fruit of the search, the controlled substance the defendant was convicted of possessing, had been excluded. Since, as discussed below, we must determine the constitutional validity of the search, we recount the preliminary hearing evidence concerning the search.

On May 8, 1997, the Sacramento Sheriff's Department received a report about 1:30 a.m. that a Chevrolet van was parked in a residential area. The caller, a resident in the area, thought the van was suspicious and "believed that there was possible burglary activity about to take place." Deputy Donald Bricker and another deputy responded to a dispatch and went to investigate. Deputy Bricker observed the right front and rear tires of the van were on the sidewalk, in violation of Vehicle Code section 22500, subdivision (f). When he knocked on the side door of the van, the defendant opened the door. The deputy looked inside the van and saw the defendant (by the side door) and Scott LeBlanc (in the rear of the van). There was a bed in the rear of the van, and the deputy was concerned someone could have hidden under it.

Deputy Bricker asked the defendant and LeBlanc what they were doing in the neighborhood, but neither responded. He then asked for their identification to determine whether either was subject to an arrest warrant or had a valid license to drive the vehicle. The deputy was concerned about his safety because of the possibility of a concealed weapon. The defendant looked around on the floor of the van and stated she was searching for her identification. However, after she searched for several minutes without finding it, the deputy asked them to step out of the van. There was no indication the defendant was under the influence of alcohol or narcotics. .

Deputy Bricker patted them down for weapons and placed them in the rear of the patrol car. The defendant gave the deputy her name and birth date and claimed ownership of the van. She told him her identification was in the van, either on the floorboard or in the visor, despite the fact that she had previously searched those areas. When Deputy Bricker told the defendant he was going to look in the van for her identification, she told him she did not want him to search the van. Choosing now to respond to Deputy Bricker's original inquiry as to her purpose in the neighborhood, she told Deputy Bricker that she and LeBlanc were "on a rendezvous because they didn't want to be seen together."

Deputy Bricker initially went into the van for just a moment, looking for weapons or other people, and saw a purse on the floor in the back of the van. After a discussion with the other deputy, he reentered the van and opened the purse. Inside, he found a glass pipe, marijuana, methamphetamine, and the defendant's California identification card.

DISCUSSION

I

*Failure to Preserve Issue of Search*

██ The defendant failed to preserve the issue of whether the search violated the Fourth Amendment of the United States Constitution because she did not raise the issue at trial. (*People* v. *Lilienthal* (1978) 22 Cal.3d 891 [150 Cal.Rptr. 910, 587 P.2d 706].) To obtain review of the issue of whether a search was valid, the defendant must tender the issue to the trial judge. (*Id.* at pp. 896-897.) The defendant did not do so here.

Even though Judge Ford and Judge Connelly both sat on the Sacramento Superior and Municipal Court, Judge Ford functioned in this case as a committing magistrate, not as a trial judge. The distinction is not artificial and inconsequential. The magistrate serves a function different from the function of the trial judge. While the magistrate makes a determination of probable cause in connection with a preliminary hearing (see Pen. Code, § 991), the trial judge may review the magistrate's finding of probable cause and reverse it (see Pen. Code, § 995).

Even though the voters and Legislature have made it possible for judges to serve in either role, the roles are still distinct and take place at different levels—that is, the magistrate makes determinations reviewable by the trial judge. When we undertake review of a case, we are reviewing the actions of

the trial judge who had the ability to review the findings of the magistrate. (See *People* v. *Lilienthal, supra,* 22 Cal.3d at p. 896.) Accordingly, the possibility that the magistrate and the trial judge are judges of the same court does not affect our analysis under *People* v. *Lilienthal, supra,* 22 Cal.3d 891.

II

*Ineffective Assistance of Counsel*

■ Having concluded the defendant did not preserve the issue of the legality of the search for appeal, we now discuss why, waiver notwithstanding, we must consider the merits of the defendant's argument—proof that criminal procedure can defy logic.

The defendant complains her trial counsel was constitutionally ineffective for failing to preserve the legality of the search as an issue to be considered on appeal. Like pouring alkali on acid, raising the issue of ineffective assistance of counsel neutralizes *Lilienthal* waiver and requires appellate review of the legality of the search.

■ "To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' (*Strickland* v. *Washington* (1984) 466 U.S. 668, 686 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674]; [citation].) If a defendant has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient. (*Strickland* v. *Washington, supra,* 466 U.S. at p. 697 [104 S.Ct. at pp. 2069-2070].) If the record contains no explanation for the challenged behavior, an appellate court will reject the claim of ineffective assistance 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' (*People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)" (*People* v. *Kipp* (1998) 18 Cal.4th 349, 366-367 [75 Cal.Rptr.2d 716, 956 P.2d 1169].)

■ Applying these principles to the failure to raise the issue of the legality of the search in the trial court, we conclude it is necessary to determine the legality of the search in order to determine whether counsel was constitutionally ineffective. If the search was invalid, failing to preserve

the issue constituted deficient performance when measured against the standard of a reasonably competent attorney. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 686 [104 S.Ct. 2052, 2063-2064, 80 L.Ed.2d 674].) Furthermore, the failure to preserve the issue of the legality of the search is prejudicial to the defendant if there would not have been sufficient evidence, otherwise, to convict. (*Ibid.*) Hence, to determine whether counsel was constitutionally ineffective for failing to preserve the issue, we must consider the merits of the Fourth Amendment argument. *Lilienthal* therefore is neutered.

Take, for example, the Supreme Court's decision in *People* v. *Miranda* (1987) 44 Cal.3d 57, 80-81 [241 Cal.Rptr. 594, 744 P.2d 1127]. First, the court eruditely invoked *Lilienthal*, with accompanying statutes, cases, and footnotes, and concluded the issue of the legality of the search was not preserved for review on appeal because it was not raised in the trial court. In the next breath, the court recognized the defendant's further assertion that the failure to preserve the issue constituted ineffective assistance of counsel and rushed headlong into a discussion of the legality of the search. (*Ibid.*)

Conscious of judicial hierarchy, we acknowledge we are bound by both *Lilienthal* and *Strickland*, so we dutifully cite and apply both.[1] (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)[2] However, with our power of publication—or, more precisely, our provisional power of publication until the Supreme Court decides otherwise—we may note the tension between the decisions. We are "bound, but not gagged." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 931, p. 967.) Having noted the anomaly, we enter into a consideration of the legality of the search.

 This was a vehicle search. Since it is well established that containers in a vehicle are searchable if the vehicle is searchable, especially when, as here, the container searched was a likely place for the object of the search (see *Wyoming* v. *Houghton* (1999) 526 U.S. 295 [119 S.Ct. 1297, 143 L.Ed.2d 408]), we will focus on whether Deputy Bricker's search of those places in the van likely to hold defendant's identification was legal.

---

[1] Our purpose is not to criticize *Lilienthal* or *Strickland* on their individual merits but, instead, to note that, at times, it is impossible to accommodate contemporaneously the important societal interests embodied in those opinions.

[2] We regularly cite *Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d at page 455, for the proposition that we are bound by the decisions of the California Supreme Court. That case states that ". . . all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of *stare decisis* makes no sense." (*Ibid.*) While it may appear circular simply to cite the decision of the Supreme Court for the proposition that we are bound by its decisions, we agree that our judicial system would be unworkable without the requirement that we follow the decisions of the Supreme Court.

The purpose of Deputy Bricker's search was to identify the defendant. With this in mind, we must answer two questions: Was it permissible to require identification from the defendant? And, if so, could he obtain the identification from the van, himself, rather than allowing the defendant to retrieve it?

■ An officer may detain and cite a person for violating the Vehicle Code. (*People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1458 [266 Cal.Rptr. 587].) While an officer may give notice of a parking violation to the owner or driver of the vehicle by placing a citation on the windshield if the vehicle is unattended (see Veh. Code, § 40202), there is no similar provision for giving notice when the vehicle is attended. ■ Accordingly, since the defendant does not contest the fact that her van was parked illegally, Deputy Bricker lawfully detained her. Once detained, the defendant was obligated to identify herself. (See *People* v. *Faddler* (1982) 132 Cal.App.3d 607, 610 [183 Cal.Rptr. 328].)

Penal Code section 853.5 and Vehicle Code section 40504 allow an officer who arrests a person for an infraction to require evidence of identification, and where the person does not have satisfactory identification, to thumbprint and release the person. Here, the defendant had been detained, not arrested, and therefore Penal Code section 853.5 and Vehicle Code section 40504 are inapplicable, but, even if she had been arrested at the time of the search, the search for identification did not contravene the letter or spirit of those sections. (See also Veh. Code, § 40302 [allowing officer to arrest and take before magistrate a person who violates the Vehicle Code and does not have satisfactory identification].)

Penal Code section 853.5 states, in pertinent part: "In all cases . . . in which a person is arrested for an infraction, a peace officer shall only require the arrestee to present his driver's license or other satisfactory evidence of his identity for examination and to sign a written promise to appear. If the arrestee does not have a driver's license or other satisfactory evidence of identity in his or her possession, the officer may require the arrestee to place a right thumbprint . . . on the promise to appear. . . . Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody." Vehicle Code section 40504 similarly provides for use of a thumbprint "if this person has no satisfactory identification . . . ."

The thumbprint provision only applies if the person does not have satisfactory identification. The defendant had identification, and advised Deputy Bricker that it was in the van, despite her earlier unsuccessful search for it.

Accordingly, when Deputy Bricker searched the van and, specifically, the purse, he was still pursuing the first and best option for identifying someone under Penal Code section 853.5 and Vehicle Code section 40504, that is, by satisfactory identification.

■ To determine whether Deputy Bricker's search violated the Fourth Amendment, "we must evaluate [his] search . . . under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is needed for the promotion of legitimate governmental interests." (*Wyoming* v. *Houghton, supra,* 526 U.S. at pp. 299-300 [119 S.Ct. at p. 1300].)

■ "In the ordinary situation where the safety of the officer or the public is not endangered thereby, a driver may himself retrieve and present his license for examination by an investigating officer." (*People* v. *Faddler, supra,* 132 Cal.App.3d at p. 610.) If officer safety warrants, however, the officer may control the movements of the vehicle's occupants and retrieve the license himself. (*Ibid.*; accord, *People* v. *Webster* (1991) 54 Cal.3d 411, 431 [285 Cal.Rptr. 31, 814 P.2d 1273].)

In *Faddler*, an officer observed a vehicle being driven erratically at 2:00 a.m. A passenger was leaning out of a window with a whiskey glass in his hand. When the officer executed a stop, he found three men in the car. One of the passengers appeared intoxicated, and the other was boisterous and mouthy. The driver told the officer his driver's license was in the glove compartment and started to retrieve it, but the officer ordered him to stay where he was and opened the front passenger door to get the license. When he opened the door, he found, in plain view, a baggie containing marijuana. (132 Cal.App.3d at p. 609.) We held the search was lawful because to have allowed the driver to "rummage about" in the car would have "diminish[ed] the officer's control over a potentially dangerous situation and creat[ed] a potential threat to his safety and that of the public. [Citations.]" (*Id.* at pp. 610-611.) We concluded: "We are satisfied that no constitutional rights are implicated by the type of minimal intrusion which occurred here, given its limited objective, legitimate purpose, and the exigent circumstances which practically prohibited the accomplishment of that purpose in any other way than was done." (*Id.* at p. 611.)

In *People* v. *Webster, supra,* 54 Cal.3d at page 431, our Supreme Court ruled that an officer, for his own safety, was entitled to search for registration papers after stopping an automobile for speeding, determining the driver was wanted on an outstanding warrant, and removing the five passengers from the car: "Moreover, it was reasonable for [the officer] to remove the

passengers and find the documentation himself. [The officer] had every reason to believe that the occupants, who disclaimed ownership, would not be able to find or produce the registration on their own. [Citations.] For his own safety, [the officer] was entitled to search for the papers personally and to remove the five passengers from the car before doing so."

■ Here, too, although defendant advised the officer that she had identification, the officer had every reason to believe that she would not find it, given her unsuccessful search of the very places she claimed the identification was to be found. We infer, consistent with and in support of the trial court's order denying the motion to suppress, defendant deliberately failed to find her identification. The officer did not need to permit her to rummage further in the vehicle or her purse, with the attendant risk that a weapon would be pulled, in light of the hour, defendant's refusal to acknowledge the reason for her presence upon the officer's original inquiry, and her belated disclosure of a rationale only after the officer stated his intent to search the vehicle.

■ Officer safety is a legitimate and important governmental interest to consider in Fourth Amendment analysis. (*People* v. *Glaser* (1995) 11 Cal.4th 354, 364 [45 Cal.Rptr.2d 425, 902 P.2d 729]; cf. *Knowles* v. *Iowa* (1998) 525 U.S. 113 [119 S.Ct. 484, 142 L.Ed.2d 492] [full search of car not justified by citation for speeding alone].) The privacy protections of the Fourth Amendment must not be construed so as to compromise the safety of those who serve and protect the public.

Since we decided *Faddler*, the United States Supreme Court has made it clear there is nothing more than a reduced expectation of privacy in the contents of a vehicle. Occupants "possess a reduced expectation of privacy with regard to the property that they transport in cars, which 'trave[l] public thoroughfares,' [citation], 'seldom serv[e] as . . . the repository of personal effects,' [citation], are subjected to police stop and examination to enforce 'pervasive' governmental controls '[a]s an everyday occurrence,' [citation], and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny." (*Wyoming* v. *Houghton, supra,* 526 U.S. at p. 303 [119 S.Ct. at p. 1302].)

■ Balancing the degree of the intrusion on the defendant's reduced expectation of privacy in the contents of her van against the promotion of the legitimate and important governmental interest of officer safety (*Wyoming* v. *Houghton, supra,* 526 U.S. 295 [119 S.Ct. 1297]), we conclude Deputy Bricker's search of the van for purposes of the defendant's identification— following defendant's failure to produce it and earlier evasiveness—did not violate the Fourth Amendment.

The van was parked in a residential neighborhood in the middle of the night. Deputy Bricker was aware the van was foreign to the neighborhood, and a resident caller had stated the belief that "possible burglary activity [was] about to take place." When he made contact with the occupants, they did not respond to his inquiry concerning why they were there. Following a simple request for identification, they were unable to provide it, although given several minutes to do so. The officer could have reasonably been concerned over what the defendant was searching for. There could have been . a concealed weapon or even another person in the van. Thus, allowing the defendant and LeBlanc to remain in the van under the suspicious circumstances—the time, the darkness, the van's presence in a neighborhood where it did not belong, the occupants' failure to explain their presence, their failure to provide identification when given the opportunity, the deputy's lack of knowledge concerning what or who, other than the defendant and LeBlanc, was in the van—constituted a potentially dangerous situation. While it may seem simple, in retrospect, to see Deputy Bricker was not in danger, the objective circumstances known to the deputy at the time suggested, even necessitated, that he proceed with caution.

After all, what were Deputy Bricker's options—to allow defendant to resume her search that thus far had inexplicably failed to produce identification, with the risk that she pull out a weapon from her purse or from elsewhere in the van? We think not.

Furthermore, Deputy Bricker's search was limited to a search for identification. ▇▇ " 'The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.' [Citation.]" (*Wyoming* v. *Houghton, supra,* 526 U.S. at p. 302 [119 S.Ct. at p. 1301].) ▇▇ While the defendant told him her identification was in the visor or on the floorboard, in light of her inability to produce any identification, it was reasonable for the deputy to conclude that her identification could be elsewhere and that some form of identification would likely be found in her purse. She claimed she was searching for the identification while she was in the van. The defendant certainly had not established any reason for the deputy to think she was credible. There was no evidence he was searching for anything but her identification. As stated in *People* v. *Miranda* (1993) 17 Cal.App.4th 917, 927 [21 Cal.Rptr.2d 785], "[i]f the driver is unable to produce a driver's license, registration, or satisfactory proof of identity, then the officer may, depending on the circumstances, reasonably expand the scope of the stop, making it incrementally more intrusive." Under these circumstances, the search did not violate the Fourth Amendment.

The defendant contends her Vehicle Code violation was not an arrestable offense and thus not subject to a request for identification. An "arrest" for a minor Vehicle Code violation takes place when the officer has probable cause to believe the person has violated the code and detains the person. This type of arrest does not normally result in physical custody and the concomitant search incident to arrest. (*People* v. *Monroe* (1993) 12 Cal.App.4th 1174, 1181 [16 Cal.Rptr.2d 267].) When a person is subjected to arrest for violation of the Vehicle Code, the person must produce "satisfactory evidence of his identity for examination." (Veh. Code, §§ 40302, 40504.)

There is no distinction to be made in violations of the Vehicle Code for purposes of requesting identification just because the vehicle is either moving or parked when the violation occurs. To be sure, there are varying degrees of seriousness in Vehicle Code violations, but the movement or nonmovement of the vehicle at the time of the violation is not the only factor justifying the invasiveness of the encounter with the officer.

The defendant asserts a violation of the Vehicle Code which ultimately produces a civil penalty rather than a criminal penalty cannot result in an arrest subject to the provisions of Vehicle Code section 40302, allowing the officer to require the person to produce satisfactory identification. Nonetheless, she gives no authority or reasoning for this contention. She merely recites statutes that provide for civil penalties for parking violations. She does not (and cannot) explain why this section, which applies on its face to parking violations, does not apply to her parking violation. Like the movement or nonmovement of the vehicle, the penalty for the particular Vehicle Code violation does not, by itself, determine the eventual invasiveness of the encounter.

The defendant's attempt to support her contention concerning civil penalties by citing to other provisions of the Vehicle Code is also ineffectual. For example, the defendant asserts Deputy Bricker could not require her to provide identification because (1) an officer can leave a citation on the windshield of an unattended vehicle (Veh. Code, § 40202, subd. (a)) and (2) a citation can be mailed to the owner of the vehicle if the vehicle is driven off while the officer is issuing the citation (Veh. Code, § 40202, subd. (d)). Neither of these circumstances was present in this case. The vehicle was attended and was not driven off during issuance of the citation.

The encounter between Deputy Bricker and the defendant was justified by the defendant's Vehicle Code violation. Since Deputy Bricker had probable cause to believe there had been a violation, the defendant had to produce

satisfactory identification. When she deliberately failed to produce identification and acted suspiciously (including a failure to explain her and her van's presence in another neighborhood at 1:30 a.m.), Deputy Bricker, for his own safety, was justified in retrieving the identification himself. Therein lies the justification for the search and the holding of our opinion. This was not a search incident to arrest for a traffic violation, as was the case in *Knowles* v. *Iowa, supra,* 525 U.S. 113 [119 S.Ct. 484, 142 L.Ed.2d 492]. Neither was this a search for contraband, as was the case in *Wyoming* v. *Houghton, supra,* 526 U.S. 295 [119 S.Ct. 1297, 143 L.Ed.2d 408]. It was a search for identification. The narrow question is whether the officer had to risk his safety by allowing an uncooperative detainee to purport to try yet again to retrieve it. In such circumstances, an officer is not required merely to default to the machinations of an anonymous detainee. As a matter of officer safety, we hold that Deputy Bricker's retrieval of the identification was consistent with the Vehicle Code, cases such as *People* v. *Faddler, supra,* 132 Cal.App.3d 607, and *People* v. *Webster, supra,* 54 Cal.3d 411, and the Fourth Amendment.

This is not a case, as posited by the defendant, of the detention of a citizen and search of her property "on the basis of a minor parking infraction alone." Had the defendant answered the officer's inquiry of the reason for her presence and produced the identification in her purse, there would have been no reason for any search. But that was far from the case here: the defendant did not explain her presence in the van at 1:30 in the morning or produce her identification. Instead, she rummaged in places she knew her identification was not. She never asserted she had no identification, she simply chose not to provide it to Deputy Bricker. This was not her prerogative. Deputy Bricker did not have to put his safety at risk by permitting her to renew her earlier, deliberately unsuccessful, search for identification, but instead could retrieve it himself.

Since the search was legal, trial counsel was not constitutionally ineffective for failing to preserve the issue for review.

DISPOSITION

The judgment is affirmed.

Kolkey, J., concurred.

**HULL, J.,** Dissenting.—Because, as a practical matter, the stated reason for the rule may have become lost in the era of cross-designation and, now, court unification, I question the vitality of *Lilienthal*'s (*People* v. *Lilienthal*

(1978) 22 Cal.3d 891 [150 Cal.Rptr. 910, 587 P.2d 706]) holding that a magistrate's ruling on a motion to suppress is not reviewable if it is not raised again in the superior court. Even so, while we may not be bound by a holding of the Supreme Court premised on court structures and responsibilities that now have been altered in ways that render the rule arguably artificial, the rule should be changed by the Supreme Court, if it is to be changed at all. There may be a reason for it. Therefore, I agree that defendant's challenge to the search of her purse was waived for purposes of appeal when her attorney failed to raise the issue in the superior court.

I also agree that defendant's attorney's failure to raise the matter of the search in superior court, under these circumstances, necessarily places into question the effective assistance of defendant's counsel. Since there could have been no sound tactical reason for failing to pursue a motion which, if successful, would have resulted in a dismissal of the charges brought against defendant, and since it must be said that a reasonably competent attorney would not have waived the search issue by failing to raise it in superior court, we must decide whether defendant's counsel's failure to preserve the issue for purposes of appeal was to defendant's prejudice. The question of prejudice, in turn, depends on the lawfulness of Deputy Donald Bricker's search of defendant's purse. If the search was lawful, the motion to suppress properly was denied and defendant was not prejudiced by her counsel's failure to preserve a point that was destined to be lost. If the search was unlawful, the evidence in defendant's purse should have been suppressed and, so far as we can tell from this record, the charges dismissed. In that case, her attorney's failure to save this issue for further review left defendant without the effective assistance of counsel. Because the majority and I disagree on the lawfulness of the search, I dissent.

A detailed, chronological recitation of the events of May 8, 1997, is necessary to a correct resolution of the issue before us.

In the early morning hours of May 8, a resident of a Sacramento neighborhood became suspicious of a van parked across the street from his home and called the police. The person making the report "believed there was possibly burglary activity about to take place" because the van did not belong in the neighborhood and there were people inside of it. At approximately 1:26 a.m. Deputy Bricker was sent to investigate.

Bricker found the van and, because the tires on the right side of the van rested on the sidewalk, decided the van was parked in violation of the Vehicle Code. By this time another deputy had arrived to support Bricker.

Bricker knocked on the side door of the van "to gain the attention of anyone that would be inside." Defendant opened the side door and asked the

deputies what they wanted. Bricker told defendant the reason he and the other deputy were there and then asked defendant what she was doing in the neighborhood. Bricker noticed there was a mattress on a frame of some sort and a person, who turned out to be Scott LeBlanc, in the back of the van. Defendant did not immediately respond to Bricker's question, nor did Leblanc.

Bricker then asked the two for identification because he wanted to determine whether either person was the subject of an outstanding arrest warrant and whether either had a valid driver's license. Defendant and LeBlanc were still in the van and Bricker "probably" was using his flashlight to shine inside the van.

Bricker was concerned for his safety and the safety of the other deputy at this time because "[i]t's [a] large passenger type van with a bed in the rear which could easily conceal weapons of any kind, and they had not been searched for weapons."

Bricker allowed defendant to look around on the floor of the van for her identification but, "after several minutes" or "a couple of more minutes" she could not find any. Bricker asked both defendant and LeBlanc to get out of the van in order to search them for weapons and detain them in the patrol car. They did and Bricker conducted a patdown search of both of them. Bricker found nothing and was able to determine that defendant had no identification "on her person."

Bricker put defendant and LeBlanc in the back of his car at which time defendant gave the deputies her name and her date of birth and told them she owned the van. She also said that her identification was on the floorboard or in the visor at the front of the van. At some time while defendant was in the back of the patrol car she explained her presence in the neighborhood by saying that "they both had [a] separate boyfriend, girlfriend[], and they were there on a rendezvous because they didn't want to be seen together."

Bricker told defendant he was going to search her van for her identification. She objected.

Bricker "initially went inside the van to do a quick cursory search for any weapons that would be in the immediate presence or out in the open, and then walked out, back out of the van." Bricker was concerned that someone might be under the bed, although he did not look there first. He did not see any weapons in the van; he did see, however, a purse on the floor of the van that he believed belonged to defendant.

After this first cursory search for weapons, Bricker had a discussion with his partner about the purse and then went back into the van to look for identification in the purse, on the floorboard and in the visor area. After retrieving the purse from the van, Bricker did not give it to defendant but instead looked into it himself. He saw a glass pipe and, upon further search, he found marijuana, methamphetamine and defendant's California identification card.

During the course of these events, defendant was "somewhat hesitant to listen to what [Bricker] had to say." Bricker concluded defendant did not feel that the deputies had a right to ask about her presence in the neighborhood.

Bricker wrote on the arrest report that defendant was sober and he did not see anything that led him to believe defendant was "under the influence." He did not, however, conduct a complete examination of defendant to determine whether she was under the influence of narcotics.

When asked whether anything about defendant's conduct made him feel that defendant was carrying any kind of weapon or was otherwise dangerous, Bricker answered, "No."

My principal disagreement with the majority opinion lies with the analytical framework the majority adopts to sustain the search of defendant's purse.

First, the majority concludes that in light of the traffic citation Deputy Bricker had a right to require defendant to produce identification. Second, based on a concern for officer safety, Bricker was justified in conducting the search for identification himself. As to the second part of their analysis, the majority resorts to officer safety as a rationale not only to support a search of the van, but also the contents of defendant's purse. Citing *Wyoming* v. *Houghton* (1999) 526 U.S. 295 [119 S.Ct. 1297, 143 L.Ed.2d 408] for support, the majority holds that, if Bricker could search the van for weapons, on that basis alone, he could search for weapons and identification in defendant's purse, which was in the van. This, according to the majority, is because "it is well established that containers in a vehicle are searchable if the vehicle is searchable . . . ." (Maj. opn., *ante*, at p. 487.) But the law of search and seizure has not yet gone that far.

*Wyoming* v. *Houghton* held that the existence of *probable cause* to search a vehicle justified the search of any portion of the vehicle or any container therein that might hold contraband or evidence of the suspected criminal activity. It is fundamentally different to say that a concern for officer safety

that justifies the search of a vehicle itself justifies, in all circumstances, the search of any place or anything in the vehicle that might contain a weapon. Once an officer has probable cause to believe that a crime has been committed, as in *Wyoming* v. *Houghton*, the justification for the search is established and the search proceeds. A search justified by a concern for officer safety or the safety of the public must be based on circumstances known to the officer at the moment of the search, circumstances that can change as an encounter with a suspect progresses.

In *Terry* v. *Ohio* (1968) 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] the United States Supreme Court held ". . . where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous; where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries; *and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety*, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (*Id.* at pp. 30-31 [88 S.Ct. at pp. 1884-1885, 20 L.Ed.2d at p. 911], italics added.)

Thus, a reasonable belief that a car's occupants are committing or have committed a crime and that they are armed and dangerous at one point in an investigation may later be dispelled by other facts discovered as the investigation proceeds. If the search follows the discovery of new facts that reasonably should dispel the officer's suspicions, one cannot properly reach back to an earlier set of facts to justify the search.

While it often will be true that an officer's reasonable suspicion, formed early in a confrontation, that someone might be armed and dangerous will continue throughout the confrontation to the time of the search, it is not always so. In my view, that which the majority sees as a well-established rule is not established at all except where a vehicle search is based on probable cause. I cannot agree that the search of defendant's purse was justified so long as the search of the van was justified. One must give independent consideration to the search of the purse itself and the officer's knowledge at the time of the search.

As the earlier quotation from *Terry* v. *Ohio* demonstrates, it has been the law since at least 1968 that an officer, suspicious of criminal activity, has the right to conduct a limited search of a person *only* if the officer entertains a reasonable suspicion or belief, based upon the facts known to him at the

time, that the person may be armed and presently dangerous. The search can extend to any area that might contain a weapon to which a suspect may have access. (See *Michigan* v. *Long* (1983) 463 U.S. 1032 [103 S.Ct. 3469, 77 L.Ed.2d 1201].) Thus, in addition to a reasonable belief of criminal activity, a reasonable belief that a suspect is armed or could immediately become armed has been a constant in the law as it relates to searches based on officer safety. Notwithstanding the majority's lengthy quotation from *Wyoming* v. *Houghton* concerning a reduced expectation of privacy in the contents of a motor vehicle (maj. opn., *ante*, at p. 490), the law in this regard has not changed.

The officer's belief that a suspect is armed and dangerous is necessary even for a search as limited as a patdown of outer clothing and it is certainly necessary to a holding that the search of this defendant's purse was lawful.

I cannot find in this record facts that would have led Deputy Bricker reasonably to believe that the defendant had a weapon in her purse at the time he searched it.

At the time he looked into her purse, Deputy Bricker knew defendant and LeBlanc were in a van that was parked illegally on a sidewalk in a neighborhood other than their own at 1:30 in the morning. He knew that defendant had initially refused to explain her presence there and had been unable on her first attempt to produce identification, all of which was of course suspicious of something.

He also knew that, with his acquiescence, she had rummaged around on the floor of the van looking for identification and had not produced a weapon. He knew that he had both occupants out of the van, that he had searched them for weapons and they had none. He knew that he had searched the van once for weapons or other occupants and a second time for identification and had found no weapons and no other occupants. He did not find tools or other items that might have suggested the occupants had committed or were about to commit a crime of violence or a crime that would be likely to entail the use of weapons.

Officer Bricker also knew that defendant had given him a name and date of birth and a legally innocent explanation for defendant's and LeBlanc's presence in the van in that neighborhood at that time of night, which explanation, whether believable or not, was supported at least by the presence of a bed in the back of the van. While defendant was "somewhat hesitant" to listen to what Bricker had to say, she was not abusive and Bricker did not see or hear anything that led him to believe defendant was under the influence of drugs or alcohol.

Finally, Deputy Bricker himself said there was nothing about defendant's conduct that made him think defendant was carrying any kind of weapon or was otherwise dangerous.

These facts are not sufficient to support a reasonable belief by Deputy Bricker that defendant had a weapon in her purse and was presently dangerous at the time he conducted his search.

If the majority opinion is correct and this record is sufficient to support a reasonable belief there were weapons in the van which ipso facto justified a search of defendant's purse, we effectively have arrived at a point where a reasonable belief of any criminal activity equates to a reasonable belief that suspects are armed and dangerous, a point where a reasonable belief of criminal activity in or about a vehicle alone will justify a full search of the vehicle for weapons and, therefore, the vehicle's occupants for weapons and whatever is within the vehicle that could contain a weapon. At least in cases involving vehicles, if the majority is correct, in the words of *Terry* v. *Ohio,* an officer now need only conclude that "criminal activity may be afoot" (392 U.S. at p. 30 [88 S.Ct. at p. 1884, 20 L.Ed.2d at p. 911]) to conduct a search for weapons. The majority has effectively dispensed with the further requirement that, in order to conduct a lawful search, an officer must reasonably believe also that the person with whom the officer is dealing is armed or capable of becoming so and presently dangerous. While a concern for officer safety is " 'both legitimate and weighty,' " (*Maryland* v. *Wilson* (1997) 519 U.S. 408, 412 [117 S.Ct. 882, 885, 137 L.Ed.2d 41], quoting *Pennsylvania* v. *Mimms* (1977) 434 U.S. 106, 110 [98 S.Ct. 330, 333, 54 L.Ed.2d 331]), and while I do not underestimate or underappreciate the risks facing law enforcement officers every time they stop a vehicle, I do not believe Fourth Amendment cases by which we are bound allow so much. I would reverse the judgment.

A petition for a rehearing was denied August 23, 1999, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 10, 1999. Kennard, J., was of the opinion that the petition should be granted.