Filed 11/6/14  P. v. Chin CA3

**NOT TO BE PUBLISHED**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHUI FEI CHIN,<br><br>Defendant and Appellant. | C072504<br><br>(Super. Ct. No. 10F04927) |

After his motion to suppress evidence was denied, a jury found defendant Chui Fei Chin guilty of cultivation and possession for sale of marijuana.  (Pen. Code, § 1538.5; Health & Saf. Code, §§ 11358, 11359.)  Sentenced to two years in county jail (Pen. Code, § 1170, subd. (h)(2)), defendant appeals.  He contends his motion to suppress evidence should have been granted.  We conclude defendant did not have a reasonable expectation of privacy in the area searched and affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On November 2 and 7, 2011, the trial court, Judge Maryanne Gilliard presiding, conducted a two-day hearing on defendant's motion to suppress evidence preceding his arrest. (Pen. Code, § 1538.5.) The hearing was held just prior to, and in conjunction with, the preliminary hearing. Defendant's motion was denied.

We recite below only those facts from the suppression hearing before Judge Gilliard that are necessary to our disposition of this appeal.

On June 2, 2010, an arrest warrant was generated for Jerome Henderson, who was reported missing from a sex offender group home, called Sonia's Group Home, which the warrant indicated was located at 9807 Grant Line Road.[1] On July 31, 2010, Elk Grove Police Officer David Monti was on patrol duty and picked up Henderson's arrest warrant from a stack of warrants in the patrol box. The arrest warrant was for a parole hold and indicated Henderson was a sex offense registrant. Upon obtaining the warrant, Monti checked with dispatch to confirm the warrant was still valid and active. He also confirmed Henderson's last known address in the countywide known person file, which listed Henderson's address as 9807 Grant Line Road.

Officer Monti went to the Grant Line Road location to verify the address and gather information about the layout of the property. There were three structures on the property—a single-story main residence with a two-car garage, a large detached garage/cottage, and a shed. Monti then met with two other officers, Brandon Holly and Paul Resch, who were going to assist with the service of the warrant.

Officer Holly had been to the Grant Line Road property six to 12 months earlier and knew it to be a halfway house for sex offense registrants. Holly also knew that law

---

[1] Sonia's Group Home had closed the Grant Line Road location as of May 20, 2010, but that information was not contained in Henderson's file.

enforcement had contacted Henderson, whom he knew to be a sex offense registrant, at the Grant Line Road address two or three times—most recently in April or May 2010.

The officers first approached the main residence. When no one answered the front door, the officers went to the detached garage/cottage. Officer Monti could hear what sounded like a shower running inside the garage and surmised the garage had been converted into a living space. When he knocked on the door of the garage, he could hear a lot of "shuffling" sounds and movement inside the garage. A woman's voice asked "Who [is] it? Who [is] there?" After identifying themselves as officers several times to both a female and male occupant, the male occupant (later identified as defendant) finally opened the door, blocking the officer's view of the interior with his body. Monti could see a female behind defendant. Monti asked who lived there and for how long and the female said she had lived there for a month and claimed to both own and rent the house.

The garage/cottage contained multiple rooms, with a hallway and interior doors. There were no beds in any of the rooms in the building. Officer Monti was still of the belief that Henderson was on the premises and, while sweeping the building for the presence of additional individuals, discovered a room with tables containing what was later determined to be 804 marijuana plants. The female occupant claimed to have a license for medicinal marijuana. She also provided consent for the officers to search the main residence. Officers found the female's purse in the main residence, and there were several bedrooms with beds, but there was no evidence of additional personal items found in the residence or garage/cottage.

The magistrate denied defendant's motion to suppress evidence, finding the officer's conduct was justified and did not violate the Fourth Amendment, and held defendant to answer on charges of cultivation and possession for sale of marijuana. Defendant was subsequently found guilty of both offenses by a jury.

## DISCUSSION

### I.  Failure to Renew the Suppression Motion

Defendant contends his trial counsel rendered ineffective assistance by not renewing the otherwise meritorious motion to suppress evidence after defendant was held to answer.[2]  The failure to renew the motion in the trial court ordinarily would preclude review on appeal.  (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896; *People v. Richardson* (2007) 156 Cal.App.4th 574, 582-589.)  But because defendant contends counsel's performance was prejudicially deficient in failing to preserve the issue for appeal, we will review the legality of the search and seizure in order to determine whether counsel rendered ineffective assistance.  (*People v. Hart* (1999) 74 Cal.App.4th 479, 485-487; cf. *People v. Hinds* (2003) 108 Cal.App.4th 897, 901-902 [limiting *Hart* to a defendant who proceeds through a jury trial after denial of a suppression motion; *Hart* is inapplicable where a defendant entered a plea bargain].)

To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)  Thus, we turn to the merits of

---

[2]  To the extent defendant's appellate counsel argued during oral argument that trial counsel should have renewed the motion to suppress after defendant was held to answer for the purpose of relitigating and presenting evidence of defendant's standing, we reject her argument that counsel was ineffective for not doing so.  Defendant's entire theory of defense at trial was that he was simply helping the homeowner/renter out as a handyman and, as such, he attempted to distance himself from any connection to the garage/cottage.  Presenting evidence of defendant's connection to the garage/cottage would have been in complete conflict with the theory of defense.  Thus, not renewing the motion to suppress to relitigate standing resulted from " 'an informed tactical choice' " that a reasonably competent attorney might make and, as such, that decision cannot serve as a ground for reversing defendant's conviction on appeal.  (*People v. Bolin* (1998) 18 Cal.4th 297, 317.)

the suppression motion to determine whether counsel rendered ineffective assistance in failing to renew the motion.

## II.  Reasonable Expectation of Privacy

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." (*People v. Root* (1985) 172 Cal.App.3d 774, 778.)  To meet this burden, the defendant must establish he had "a legitimate expectation of privacy in the place searched or the thing seized." (*People v. Jenkins* (2000) 22 Cal.4th 900, 972.)  That is, the defendant must show not only that he had a subjective expectation of privacy but also that the expectation is objectively reasonable.  (*People v. Ayala* (2000) 23 Cal.4th 225, 255 (*Ayala*).)[3]  We review the matter as a question of law, against the backdrop of facts as found by the trial court.  (*People v. Leonard* (1987) 197 Cal.App.3d 235, 239.)

While the evidence established that defendant may have had a reasonable expectation of privacy as an overnight guest in the main residence, defendant did not show he had any reasonable expectation of privacy in the detached garage/cottage.  (See *Minnesota v. Carter* (1998) 525 U.S. 83, 90 [142 L.Ed.2d 373, 380] ["an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not"].)[4]  "The mere legitimate presence

---

[3]  The United States Supreme Court has replaced the term "standing" with an inquiry into whether the defendant had a reasonable expectation of privacy in the area searched or the item seized.  (See *Rakas v. Illinois* (1978) 439 U.S. 128, 140, 143 [58 L.Ed.2d 387, 399, 401].)  Although the terms have changed, the analysis has not.  (See *Ayala*, *supra*, 23 Cal.4th at p. 254, fn. 3.)

[4]  "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings.  It is for this reason that, although we may spend all day in public

on the searched premises by invitation or otherwise is insufficient in itself to create a protectable expectation." (*People v. Ooley* (1985) 169 Cal.App.3d 197, 202.) Defendant was required to establish a legitimate expectation of privacy in the garage/cottage in order to challenge the constitutionality of the search. This he did not do.

At the suppression hearing, as relevant to defendant's appeal, defendant and the People stipulated only that defendant was an overnight guest in the main residence. Defendant did not testify, nor did he call any witnesses, such as the homeowner, to establish he had any privacy interest in the garage/cottage. There was no evidence that any of defendant's personal belongings were found in either the main residence or, more significantly, the garage/cottage; or that defendant slept in the garage/cottage.[5]

---

places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend." (*Minnesota v. Olson* (1990) 495 U.S. 91, 99 [109 L.Ed.2d 85, 94-95.)

[5] During oral argument, defendant's appellate counsel repeatedly represented to this court that the record reflected there were "tools and other items" in the detached garage/cottage that were clearly attributable to, and conceded by the parties as belonging to, defendant. Respondent's counsel responded that evidence of tools being in the garage/cottage was *not* presented at the hearing on the motion to suppress and, although there was some evidence regarding tools presented at trial, he did not recall any evidence that said items were attributed to defendant. Defendant's appellate counsel then admitted that the evidence was not presented during the suppression hearing, but repeatedly assured this court that the record reflected there was evidence at trial that defendant had tools in the garage/cottage.

There was, however, no evidence presented, either at the suppression hearing or trial, that there were tools, clearly attributable to or concededly belonging to defendant, in the garage/cottage. The only evidence of *any* tools in the garage/cottage was evidence presented *during trial* that there were some ladders and a chop saw in the corner of one of the rooms in the building, which had the power light indicator on. There was no concession that the ladders or chop saw belonged to defendant and, in fact, no other evidence that they were his. And there was no evidence presented *at the suppression hearing* of *any item* in the garage/cottage attributable to defendant.

Defendant's appellate counsel's misrepresentations during oral argument caused the court and parties to waste a significant about of valuable time discussing these "phantom

6

Defendant argues that, as a garage, the outbuilding was a common area of the main residence. We disagree. We need not decide whether an overnight guest would generally have access to, and a privacy interest in, the garage of their host's residence. The outbuilding here could not reasonably be considered part of the common area of the main residence in which defendant was an overnight guest, as the main residence had its own garage. Although defendant was in the garage/cottage at the time of the search, he failed to prove the search invaded his legitimate expectation of privacy.

---

tools." We caution counsel not to overstate or misrepresent the record under the cloak of effective advocacy. Counsel is reminded that "[a]n attorney has an unqualified duty to refrain from acts which mislead the court." (*Jackson v. State Bar* (1979) 23 Cal.3d 509, 513; Bus. & Prof. Code, §§ 6068, subd. (d), 6128, subd. (a); State Bar Rules Prof. Conduct, rule 5-200(B) [a member of the State Bar "[s]hall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law"].) " ' "Honesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense." ' [Citations.] 'Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330.)

"The representation to a court of facts known to be false is presumed intentional and is a violation of the attorney's duties as an officer of the court." (*Jackson v. State Bar*, *supra*, 23 Cal.3d at p. 513.) "Even if [appellate counsel's] misconduct were not wilful and dishonest, gross carelessness and negligence constitute a violation of an attorney's oath faithfully to discharge his duties . . . ." (*Ibid.*)

**DISPOSITION**

The judgment is affirmed.

                                            BUTZ          , J.

We concur:

      HULL          , Acting P. J.

      MURRAY     , J.

8