Filed 7/30/24  P. v. Lewis CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097749 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE019734) |
| v. | |
| NICHOLAS TIMOTHY LAMAR LEWIS, | |
| Defendant and Appellant. | |

Police officers detained defendant Nicholas Timothy Lamar Lewis and determined he was on informal probation and had consented to warrantless searches as a condition of probation.  After Lewis stated that a nearby car was his, a police officer approached the car, looked through the driver's window, and saw a gun sitting on the driver's seat. Police officers then arrested Lewis for unlawful possession of the gun.

1

Lewis filed a motion to suppress the gun and statements he made after his arrest. The magistrate denied the motion, finding the warrantless search of the car justified by the automobile exception to the Fourth Amendment, and alternatively finding the police officer who found the gun had in good faith believed that Lewis had agreed to warrantless searches as a condition of probation. At trial, Lewis did not renew the motion. The jury heard the evidence Lewis had sought to suppress and then found him guilty of unlawful possession of the gun.

On appeal, Lewis contends his trial counsel performed ineffectively by failing to renew the motion to suppress the gun and his statements. To show that a renewed suppression motion would have succeeded, Lewis argues, among other things, that: (1) the police officers lacked probable cause to detain him for driving a car with tinted windows; (2) he was not on searchable probation at the time a police officer found the gun in his car because Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950) had terminated his probation; and (3) the police officers unduly prolonged the traffic stop.

We conclude Lewis failed to raise the first argument below and therefore forfeited the issue. We also conclude Assembly Bill 1950 had no effect on Lewis's one-year informal probation term. Accordingly, undisputed evidence establishes that Lewis was still on searchable probation on the day of the search and seizure. Because uncontested evidence established that Lewis consented to warrantless searches as a condition of his probation, the search and seizure did not violate the Fourth Amendment. Finally, we conclude the police officers were entitled to conduct probation searches of the driver and Lewis, so they did not unduly prolong the traffic stop. Given these conclusions, renewing the suppression motion would have been futile and Lewis's counsel did not perform ineffectively by failing to do so. We will affirm the judgment.

BACKGROUND

" 'In reviewing a suppression ruling, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence" ' " and " 'view the evidence in a light most favorable to the order denying the motion to suppress,' " meaning " '[a]ny conflicts in the evidence are resolved in favor of the superior court ruling.' " (*People v. Tully* (2012) 54 Cal.4th 952, 979 (*Tully*).) We recite the relevant facts in light of this deferential standard. Because we are determining whether defense counsel performed ineffectively by failing to renew the suppression motion prior to trial, we also include relevant facts adduced after the suppression hearing. (See *People v. Hart* (1999) 74 Cal.App.4th 479, 486 (*Hart*) [when reviewing counsel's failure to renew suppression motion in trial court, "it is necessary to determine the legality of the search in order to determine whether counsel was constitutionally ineffective"].)

On November 29, 2021, Officers Evelia Rios and Joshua Smith saw a Mercedes with "extremely dark" windows parked along the curb with its engine running. Believing that the dark tinted windows violated Vehicle Code section 26708, the officers activated their police car's emergency lights and contacted the occupants. Two people sat inside the car, one in the driver's seat and Lewis in the front passenger seat. Lewis told Officer Rios that his family lived at the adjacent house. The driver told Officer Smith that he was on probation, so Officer Smith began searching the driver and the car. Lewis told Officer Rios that he was not on probation and specifically explained, "California doesn't do five-year felony probation anymore."

While Officer Smith searched the Mercedes, Officer Rios checked the computerized records system and confirmed that the driver was on probation and had agreed to warrantless searches as a condition of probation. The system also showed that Lewis was on informal probation until December 7, 2021, and had likewise agreed to warrantless searches as a condition of probation. Officer Rios informed Officer Smith that both individuals were on probation with warrantless search conditions.

3

The police officers then noticed another car, a black Nissan Altima, in the driveway of the adjacent house. Lewis told Officer Rios that the Nissan was his car. The Nissan's engine was running, and a woman sitting in the front passenger seat was recording video of the police officers. Officer Smith then decided to conduct a probation search of the Nissan because it belonged to Lewis and Lewis was on probation with a warrantless search condition. As he approached the Nissan, Officer Smith looked through the driver's window and saw a handgun on the driver's seat.

The police officers then handcuffed Lewis, removed the woman from the Nissan, and then collected the handgun, which was loaded and had a round in the chamber. Twenty-six minutes passed from the beginning of the stop to when the officers seized the gun. When the officers searched Lewis, they found the keys to the Nissan in his pocket. Lewis asked Officer Rios to get his gold teeth coverings out of the driver's door of the Nissan, and the officer found the item exactly where Lewis indicated. While in the police car, Lewis made statements recorded on the in-car camera indicating that he owned the handgun, including referring to its model number.

Lewis moved to suppress the gun and his statements, arguing the warrantless search of the Nissan was unreasonable and his statements were a product of the unlawful search. Specifically, Lewis contended that "his informal probation had terminated when [Assembly Bill] 1950 took effect on January 1, 2021," so the search could not be justified as a probation condition. Nor could the good faith exception to the warrant requirement justify the officers relying on their computerized records because the law that purportedly terminated Lewis's probation had been in effect for 11 months, and the officers had received a memorandum alerting them to the new law. Finally, Lewis argued that the initial detention had been unduly prolonged, and the search of the Nissan had entailed an unlawful intrusion onto the curtilage of his family's home.

The People argued that, even if Lewis's probation had terminated, the police officers had relied in good faith on their records showing he was on probation and had

4

agreed to a search condition. The People also argued the search of the Nissan had been justified because the gun was in plain view and the automobile exception to the warrant requirement applied. Finally, the People argued the detention was not unreasonably prolonged because the officers believed they were justified in conducting probation searches.

The trial court noted that the parties did not contest that the initial detention of the driver and Lewis for suspected illegal window tinting was valid. The court then found that the driveway where the Nissan was parked was not part of the curtilage of the home and, even if it were, it was not Lewis's home, so his rights were not violated when Officer Smith approached the Nissan and saw the gun. The court also found that Officer Smith reasonably and in good faith relied on his partner's determination that Lewis was on probation with a search condition. For all these reasons, the court found the search of the Nissan reasonable. Finally, the court found that, once Officer Smith saw the gun, the warrantless seizure of the gun was reasonable.

Prior to trial, the parties agreed to have the prosecution contact the probation officer to determine whether Lewis was on parole at the time of the offense. The probation officer told the prosecution that all probation and parole supervision over Lewis ended on August 10, 2021. Accordingly, the prosecution dismissed two aggravating circumstance allegations based on Lewis's probation or parole status at the time of the offense and prior performance on probation or parole.

Lewis did not renew his suppression motion prior to trial. Officers Rios and Smith testified about detaining Lewis, finding the handgun, and the inculpatory statements Lewis made after his arrest. The jury found Lewis guilty of possessing the handgun while having previously been convicted of a felony. Lewis timely appealed the judgment in December 2022. Due to delays in preparation of the record as well as multiple requests to continue the briefing schedule by both parties, this case became fully briefed on March 25, 2024.

5

DISCUSSION

"Defendant concedes he did not renew his motion to suppress in the superior court and acknowledges the general rule that a defendant must do so in order to preserve the issue of the legality of a search for appeal." (*People v. Hinds* (2003) 108 Cal.App.4th 897, 900.) Lewis contends this failure violated his constitutional right to adequate representation because his suppression motion would have been granted had his attorney renewed it. "To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)

"Applying these principles to the failure to raise the issue of the legality of the search in the trial court, we conclude it is necessary to determine the legality of the search in order to determine whether counsel was constitutionally ineffective." (*Hart*, *supra*, 74 Cal.App.4th at p. 486.) "If the search was invalid, failing to preserve the issue constituted deficient performance when measured against the standard of a reasonably competent attorney." (*Id.* at pp. 486-487.) "Furthermore, the failure to preserve the issue of the legality of the search is prejudicial to the defendant if there would not have been sufficient evidence, otherwise, to convict." (*Id.* at p. 487.)

Accordingly, we consider whether the search of the Nissan was valid under the Fourth Amendment. "A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search." (*People v. Redd* (2010) 48 Cal.4th 691, 719.) As stated above, " '[i]n reviewing a suppression ruling, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence" ' " and " 'view the evidence in a light most

favorable to the order denying the motion to suppress,' " meaning " '[a]ny conflicts in the evidence are resolved in favor of the superior court ruling.' " (*Tully*, *supra*, 54 Cal.4th at p. 979.) "We independently assess whether the challenged search or seizure violates the Fourth Amendment, applying federal constitutional standards." (*People v. Tacardon* (2022) 14 Cal.5th 235, 242.)

A.      *Initial Detention for Tinted Windows*

Lewis first contends the police officers lacked probable cause to detain him for driving a car with tinted windows, which means the handgun and his later statements should be suppressed as products of this unlawful detention.  Lewis did not make this argument below and cannot make it for the first time on appeal.  " '[T]he scope of issues upon review must be limited to those raised during argument . . . .  This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions.' " (*People v. Williams* (1999) 20 Cal.4th 119, 136.)  Similarly, " '[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct.' " (*Tully*, *supra*, 54 Cal.4th at p. 980.)

Because Lewis did not raise this issue in the trial court, the parties did not introduce evidence to establish probable cause or make arguments as to how the probable cause standard applied to such evidence.  Consequently, the trial court had no opportunity to analyze the issue.  Accordingly, we conclude Lewis has forfeited this argument.

B.      *Probation Search*

Lewis next contends the search of the Nissan cannot be justified by his consent to warrantless searches as a term of probation because he was not on searchable probation at the time a police officer found the gun in his car.  Specifically, Lewis contends that Assembly Bill 1950 had terminated his probation prior to the search.  We disagree.

7

Assembly Bill 1950 amended Penal Code[1] section 1203.1 to reduce the maximum term of probation for most felonies from five years to two years. (Stats. 2020, ch. 328, § 2; *People v. Sims* (2021) 59 Cal.App.5th 943, 955-956.) While this change serves as the basis for Lewis's contention that he was no longer on felony probation at the time of the search, it is not relevant here because Lewis was serving a one-year term of informal probation for a misdemeanor that ran until December 7, 2021. This is the probation term that Officer Rios identified in her search of the computer records system, which included a search term. Assembly Bill 1950 also amended section 1203a to limit probation terms to one year for most misdemeanor offenses. (Stats. 2020, ch. 328, § 1.) Because Lewis consented to warrantless searches as a term of probation and was still on probation for eight more days at the time Officer Smith found the gun in the Nissan, the search of the Nissan was justified. (See *People v. Robles* (2000) 23 Cal.4th 789, 795.)

Lewis contends the probation officer's statement that all probation and parole supervision over him ended on August 10, 2021 supports his position, but it does not. Informal probation is served without supervision by the probation officer. (§ 1203, subd. (a); *People v. Saxton* (2021) 68 Cal.App.5th 428, 432.) Thus, the fact that Lewis was no longer under the supervision of the probation officer does not controvert the fact that he was still on informal probation.

C.    *Detention Unduly Prolonged*

Lewis also argues that the police officers unduly prolonged the traffic stop, violating his Fourth Amendment rights. We disagree.

"A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." (*Arizona v. Johnson* (2009) 555

---

[1] Undesignated statutory references are to the Penal Code.

U.S. 323, 333.) When determining the lawful duration of a traffic stop, courts should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." (*United States v. Sharpe* (1985) 470 U.S. 675, 686.) The "tolerable duration [of the traffic stop] is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop." (*Rodriguez v. United States* (2015) 575 U.S. 348, 354.) "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' [Citation.] Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." (*Id.* at p. 355.) Such checks are included in the scope of an officer's mission in conducting a traffic stop because they "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." (*Ibid.*) Circumstances developing during a routine traffic stop may provide grounds to prolong the detention. (*People v. Russell* (2000) 81 Cal.App.4th 96, 102.) Also, as relevant here, warrantless searches pursuant to a probation search condition do not violate the Fourth Amendment as long as the police officer is aware of the search condition before conducting the search and does not conduct an arbitrary, capricious, or harassing search. (*Samson v. California* (2006) 547 U.S. 843, 846; *People v. Bravo* (1987) 43 Cal.3d 600, 609-610; *People v. Reyes* (1998) 19 Cal.4th 743, 752-754; *People v. Sanders* (2003) 31 Cal.4th 318, 333.)

Here, the evidence indicates that the driver of the Mercedes almost immediately indicated that he was on probation. Officer Smith began a probation search of the driver. Officer Rios conducted a records search and determined that both the driver and Lewis had search conditions as terms of their probation. Officer Smith then began a probation search of the Mercedes. As he was completing his search of the Mercedes, Officer Smith's attention was drawn to the Nissan in the driveway. Officer Smith then walked to

9

the Nissan to conduct a probation search of Lewis's vehicle, at which point he spotted the gun. Only 26 minutes elapsed from the beginning of the stop to the seizure of the gun.

Nothing in this evidence suggests the police officers did anything to unduly delay the traffic stop. Rather, they ran the driver's and Lewis's names through their computerized records system and then immediately began probation searches, first of the driver, then of the Mercedes, and finally of the Nissan. At every step, the police officers' questions and searches were justified. This is not a situation where the officer had already discovered "he had no basis for writing a citation" but then prolonged the stop anyway to determine whether the detainee was subject to a search condition. (Cf. *People v. Suggs* (2023) 93 Cal.App.5th 1360, 1365.) Nor is this a situation where police officers found the object of their investigation but then prolonged the detention of a third party without a basis for doing so. (Cf. *Mosley v. Superior Court* (2024) 101 Cal.App.5th 243, 256-258.) Accordingly, we see no basis for concluding that the police officers unduly prolonged the traffic stop.

D.    *Conclusion*

Given the uncontroverted facts establishing Lewis was on searchable probation at the time, and the lack of any evidence showing the police officers unduly prolonged the stop, we conclude the warrantless search of the Nissan did not violate Lewis's Fourth Amendment rights. Accordingly, we need not reach alternative justifications for the search under the automobile exception to the warrant requirement or the good faith exception to the exclusionary rule. Because the search was justified, defense counsel could have reasonably determined it would have been futile to renew the suppression motion. (See *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"]; *Hart*, *supra*, 74 Cal.App.4th at p. 493 ["Since the search was legal, trial counsel was not constitutionally ineffective for failing to preserve the issue for review"].) This means counsel did not perform ineffectively and we have no basis to reverse the judgment.

DISPOSITION

The judgment is affirmed.

/s/

BOULWARE EURIE, J.

We concur:

/s/

ROBIE, Acting P. J.

/s/

RENNER, J.