[No. B009267. Second Dist., Div. One. Sept. 23, 1985.]

In re BOBBY B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BOBBY B., Defendant and Appellant.

**COUNSEL**

Cynthia K. Cohan, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Gary R. Hahn, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**CRAHAN, J.**\*—This is an appeal from a denial of the 17-year-old minor's motion to suppress evidence pursuant to Welfare and Institutions Code section 700.1. Appellant does not attack the grant of probation with conditions imposed by the Honorable Gabriel Gutierrez, judge presiding, Superior Court, Los Angeles County. The petition regarding the minor's juvenile activities was filed on September 24, 1984, pursuant to section 602 of the Welfare and Institutions Code. Appellant was determined to be a ward of the court, adjudicated a minor and placed on probation, including a termination of a previously ordered grant of home probation, all on November 16, 1984.

\*Assigned by the Chairperson of the Judicial Council.

## STATEMENT OF FACTS

At approximately 8:20 in the morning of October 21, 1984, Mr. Carlos Martinez was the administrative boys' dean at Lincoln High School in Los Angeles. He was making his morning rounds, checking for possible illicit activities of boys on the school grounds and looking for students who were not authorized to be outside of their classrooms. He entered one of the restrooms and discovered the appellant Bobby and another boy, who was neither arrested nor a party to these proceedings. Neither minor appeared to have authority to be within the restroom on that date and time.

Mr. Martinez asked the boys to show him their pass to be out of class, since classes had already begun at 8 o'clock and since the school rules required written passes for activities outside of class. Neither boy produced a pass at that time and, although there was testimony at the juvenile court hearing that Bobby's name was on the other student's pass, such documentation was never presented. Among other manifestations of suspicion were the fact that Bobby appeared to be searching for or faltering in answering the simple questions asked by Mr. Martinez, who was not a peace officer and attired in civilian dress. When the boys did not produce the pass, and inasmuch as Martinez had been aware of narcotics, especially marijuana activity, within the restrooms at Lincoln High School, he became suspicious of the boys in conducting their plainly nonpermissive activities in the restroom. Mr. Martinez stated: "[W]hen I asked for his pass and he couldn't produce it, well, then I started . . . I really became suspicious . . . because generally speaking we don't allow students to be out of class. So then I asked . . . him [Bobby] to take everything out of his pockets, because I was looking for pot."

Investigating, he found two cigarettes that appeared to be marijuana and a bindle which was later stipulated to contain one gram of cocaine. The record also indicates that the cigarettes and the bindle of cocaine were all contained inside of Bobby's wallet which Martinez inspected. He seized the suspect items and called the police agents who later took charge of both the evidence and arrested Bobby.

## CONTENTION ON APPEAL

■ Bobby's sole contention here is that the motion to suppress evidence pursuant to section 700.1 of the Welfare and Institutions Code was wrongfully denied in that there was no legally articulated probable cause to justify the unlawful search in the bathroom at Lincoln High School. ■ Both

appellant and respondent refer to the important recent case of *New Jersey* v. *T.L.O.* (1985) 469 U.S. —, —— [83 L.Ed.2d 720, 734-736, 105 S.Ct. 733, 743-744] wherein the majority of the Supreme Court, in upholding a search of a female juvenile student's purse for drugs and paraphernalia relying on the standard enunciated in *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], settled the right of the juvenile student to raise Fourth Amendment due process and stated:[1] "We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. ■ Determining the reasonableness of any search involves a *twofold inquiry: first, one must consider 'whether the . . . action was justified at its inception,'* [citation]; *second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' ibid.* ■ Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction. [¶] This standard will, we trust, neither unduly burden the efforts of school authorities to maintain order in their schools nor authorize unrestrained intrusions upon the privacy of schoolchildren. By focusing attention on the question of reasonableness, the standard will spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense. At the same time, the reasonableness standard should ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools." (Italics supplied.)

■ We are compelled to follow this federally enunciated standard regarding search and seizure of juveniles by *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], in which the court, in examining Proposition 8 as relating to admissions of evidence resulting from searches

---

[1]A minority of the Supreme Court held that although the majority was correct in concluding a minor in school was protected by the Fourth Amendment from unreasonable search and seizure, the search of her purse was intrusive and not based on probable cause, which is the same assertion raised by appellant here.

and seizures of minors, states that Proposition 8 abrogated both the "vicarious exclusionary rule" as to dependents generally and minors in particular. The minor's right to object to illegally seized evidence must be raised under federal law and not pursuant to the California Constitution. (*In re Lance W., supra*, at p. 885.)

 In applying the two-prong test of *New Jersey* v. *T.L.O., supra*, we find that the conduct of Dean Martinez was justified from its inception. He testified on both direct and cross-examination that there were repeated acts of narcotic involvement within the restrooms of the high school. On cross-examination when asked: "So because the minor was in the rest room without a pass and was nervous or looked nervous, you felt he might have pot on him? A. Yes. Well, there is other circumstances. That's what I wanted to add was that I believe we have a lot of drugs on campus. And in my capacity we are trying to stem it as much as possible. Q. So if you find a kid, lets say, without a pass behind a building and he is nervous, doesn't have a pass . . . . You would search his wallet too? A. Yes, because he is out of the—especially say the P.E. areas, because that's another known area where they do smoke marijuana. Okay. Yeah. We would do this."

One of Martinez' jobs was to make rounds and inspect for drug use and its dissemination. At the beginning of his nonaccusatory investigation it was proper for him to be in the restroom to observe the minors and to ask them the questions which inevitably led to the discovery of the concealed marijuana and one gram of cocaine.

In applying the second prong of the test we must determine whether the search, was reasonably related in scope to the circumstances which justified its interference in the first place. Here, we are presented with a boys' dean routinely making rounds asking reasonable questions aimed at controlling drug activities in an area in which the boys were not permitted to be, without authorized pass. Their illicit conduct would arouse suspicions of a reasonably prudent person to believe that in fact narcotic activities might be taking place. The investigation here was neither excessive nor intrusive nor was it threatening in any manner. The boys' dean having requested pocket turnout and having discovered the drugs within appellant's wallet, we cannot fault either his reasonable suspicion or the method of the search. To do otherwise would be an illogical invasion of his duty to check on drug use on campus. Such search was as mandated by necessity, reasonable in scope and judicially approved. (*In re Christopher W.* (1973) 29 Cal.App.3d 777, 782 [105 Cal.Rptr. 775].)

For the reasons stated herein appellant's motion to suppress evidence was properly denied. The other rulings of the court not being in issue in this appeal, appellant's grant of probation is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.