Filed 2/26/15  In re C.R. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.R., a Person Coming Under the Juvenile Court Law. | H040753 (Monterey County Super. Ct. No. J46598) |
| THE PEOPLE, Plaintiff and Respondent, v. C.R., Defendant and Appellant. | |

The juvenile court found true the allegations that C.R. (minor) possessed metal knuckles in violation of Penal Code section 21810.  Minor was declared a ward of the court for 12 months and was granted probation subject to various terms and conditions.  On appeal, minor argues the juvenile court erred in denying his motion to suppress.  He also argues the probation condition prohibiting him from going to gang gathering areas and participating in gang activities is impermissibly vague.  We modify minor's probation condition and affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Offense and Search*

Hugo Silva was a campus supervisor for King City High School.  He had been employed at the school for approximately 14 years.  As part of his duties, he ensured students went to class and stopped students from fighting.  Silva was trained to look for

suspicious behaviors. He knew there was an area on campus (the "Norteno Tree") where students associated with the Norteno gang congregated.

On January 24, 2014, Silva was on campus at the high school near the Norteno Tree at around 3:00 p.m. Silva saw minor standing near the tree with approximately 10 or 15 other students. Minor was holding his backpack on his shoulder, which Silva thought was suspicious, because students usually carry backpacks on their backs. Minor did not have the backpack's straps over his arms.

Silva walked towards minor. Minor appeared nervous and was looking around in all directions. As Silva approached, minor placed the backpack onto the ground near his feet. Silva asked minor if he had anything in his backpack, and minor responded "no." Minor adjusted his clothes, and Silva took the backpack and searched it. Silva did not ask minor for his permission to search the backpack.[1] Silva found metal knuckles, which he confiscated.

*Procedural History*

On January 28, 2014, a juvenile wardship petition was filed charging minor with possession of metal knuckles (Pen. Code, § 21810).

Subsequently, minor filed a motion to suppress the evidence pursuant to Welfare and Institutions Code section 700.1. He argued the search of his backpack violated his Fourth Amendment rights.

After a hearing, the juvenile court denied minor's motion. The court applied the two-prong test articulated in *New Jersey v. T.L.O.* (1985) 469 U.S. 325 (*T.L.O.*). First, the juvenile court determined the search was justified at its inception, because Silva had a reasonable suspicion that minor was violating school rules or the law. The court based its

_____

[1] Silva testified that the school's student handbook stated that school administrators had the right to search students' backpacks "if they're suspicious of something [*sic*]."

2

determination on several factors: (1) the Norteno tree was a "well-known hangout for the Norteno gang members," (2) Silva had 14 years of experience at the school and was familiar with the students and knew which ones were aligned with the Norteno gang, (3) minor was holding the backpack in an unusual manner, and (4) minor was "looking around" nervously. Considering the totality of the circumstances, the juvenile court concluded Silva had a "reasonable suspicion that there was something going on with this particular minor."

The court also found that the search of the backpack was not intrusive, because the backpack was on the ground next to minor's feet. Therefore, minor was not forced to give up the backpack, and Silva was not required to physically take the backpack off of him.

Minor admitted the charge alleged in the petition that same day. A month later, the juvenile court declared minor a ward of the court for 12 months and placed him on probation. The court imposed various terms and conditions, including a gang condition that stated: "You shall not visit or remain in any SPECIFIC locations known by you to be identified as gang gathering areas, areas where gang members or associates are congregating or areas specified by your Probation Officer as involving gang related activity, nor shall you participate in any gang activity."[2] Minor appealed.

## DISCUSSION

1. *Motion to Suppress*

Minor argues the juvenile court erred when it denied his motion to suppress, because the search of his backpack violated his constitutional rights. We disagree.

---

[2] During the dispositional hearing, the court imposed the probation conditions as recommended by the probation department, modifying several of the conditions in the process.

3

Our review of a ruling on a motion to suppress in a juvenile court proceeding is the same as our review of a motion to suppress in an adult criminal proceeding. We defer to the trial court's factual findings when supported by substantial evidence. (*People v. Camacho* (2000) 23 Cal.4th 824, 830.) We then exercise our independent judgment to determine if the facts found by the juvenile court support its determination that the search was reasonable under the Fourth Amendment. (*Ibid*.)

"The Fourth Amendment protects students on a public school campus against unreasonable searches and seizures. [Citations.] However, strict application of the principles of the Fourth Amendment as used in criminal law enforcement matters does not appropriately fit the circumstances of the operation of the public schools. The need to maintain discipline, provide a safe environment for learning and prevent the harmful impact on the students and staff of drugs and weapons cannot be denied." (*In re Sean A*. (2010) 191 Cal.App.4th 182, 186.) "[T]he privacy interests of schoolchildren . . . do[] not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all circumstances, of the search." (*T.L.O*., *supra*, 469 U.S. at p. 341.)

"Determining the reasonableness of a search is a two-fold inquiry: (1) whether the search was justified at its inception, and (2) whether the scope of the search, as actually conducted, was reasonably related to the circumstances that justified the initial search." (*In re Lisa G*. (2004) 125 Cal.App.4th 801, 805.) Membership in a criminal street gang, by itself, does not permit a detention. (*People v. Rodriguez* (1993) 21 Cal.App.4th 232, 239.) Although "a person cannot be detained for mere presence in a high crime area without more [citations], this setting is a factor that can lend meaning to the person's behavior." (*People v. Limon* (1993) 17 Cal.App.4th 524, 532.) "[N]ervous, evasive

behavior is a pertinent factor in determining reasonable suspicion." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124.)

Minor argues Silva's search of his backpack was not justified at its inception, because Silva lacked reasonable grounds for suspecting he had violated or was violating the law or school rules. Minor insists *In re William G.* (1985) 40 Cal.3d 550 (*William G.*) is analogous to his case.[3]

In *William G.*, a school administrator saw William and two other students walking through the center of campus. (*William G.*, *supra*, 40 Cal.3d at p. 555.) The school administrator noticed William was carrying a small vinyl calculator case, which had an "odd-looking bulge." (*Ibid.*) The school administrator asked the students where they were going and why they were late for class. (*Ibid.*) As he was speaking to the students, William placed the calculator case "in a palmlike gesture to his side and then behind his back." (*Ibid.*) When asked what was in his hand, William replied, " 'Nothing.' " (*Ibid.*) The school administrator attempted to see the case, and William told him he needed to get a warrant. (*Ibid.*) William was taken to the school administrator's office, and after "repeated unsuccessful efforts to convince William to hand over the case, [the school administrator] forcefully took and unzipped it." (*Ibid.*) Inside the case were four baggies of marijuana, a small metal gram weight scale, and some cigarette papers. (*Ibid.*)

---

[3] "Because the search in *William G.* occurred before the passage of Proposition 8, which amended the California Constitution in 1982 [citation], the *William G.* court rested its decision on both state and federal law." (*In re K.S.* (2010) 183 Cal.App.4th 72, 78, fn. 3.) Therefore, the People claim that *William G.* is not binding authority, since the court rested its decision in part on independent state grounds. As the People note, we are "bound to follow 'the Supreme Court's modern Fourth Amendment jurisprudence.' " (*People v. McKay* (2002) 27 Cal.4th 601, 608, fn. 2.) However, the majority in *William G.* found its decision "consistent" with the standard set forth by the Supreme Court in *T.L.O.*, *supra*, 469 U.S. 325. (*William G.*, *supra*, 40 Cal.3d at p. 564; *In re K.S.*, *supra*, at p. 78.) Accordingly, we reject the People's contention that *William G.* is not good law.

Our Supreme Court concluded the search of William's calculator case was illegal. The school administrator had not articulated any facts to support a "reasonable suspicion that William was engaged in a proscribed activity justifying a search. The record reflect[ed] a complete lack of *any prior* knowledge or information on the part of [the school administrator] relating William to the possession, use, or sale of illegal drugs or other contraband." (*William G.*, *supra*, 40 Cal.3d at p. 566.) The *William G.* court further noted that "William's 'furtive gestures' in attempting to hide his calculator case from [the school administrator's] view [could not], standing alone, furnish sufficient cause to search. [Citations.] Similarly, William's demand for a warrant did not create a reasonable suspicion upon which to base the search." (*Id*. at p. 567.)

*William G.* is distinguishable. Unlike the minor in *William G.*, minor's furtive gestures were not the only circumstances that triggered Silva's suspicions. Silva testified during the suppression hearing that (1) minor was near an area on campus that was an established gathering area of Norteno gang members (the Norteno tree), (2) minor was holding the backpack in an unusual manner, (3) minor appeared nervous and was looking in all directions, (4) when Silva approached, minor placed the backpack on the ground, and (5) minor said he did not have anything in the backpack. Taken alone, these circumstances would not have individually supported a reasonable suspicion that minor may be violating the law. However, when viewed together the circumstances are sufficient to support the trial court's determination that the search was justified at its inception.[4]

---

[4] In their reply brief, the People asserted the search was also reasonable because a school policy set forth in the student handbook states that students' backpacks may be searched if there is a reasonable suspicion they are violating rules. Therefore, the People argued this policy "lowered the expectation of privacy that the student might otherwise have held." (*In re Cody S*. (2004) 121 Cal.App.4th 86, 93.) Here, the school policy did not state that students would be subject to suspicionless searches; Silva testified that the (continued)

Indeed, as articulated by the trial court, the factual circumstances of this case are similar to those contemplated in *In re Bobby B*. (1985) 172 Cal.App.3d 377 (*Bobby B*.). In *Bobby B*., a school administrator saw two students, Bobby and another boy, in a school restroom when they were supposed to be in class. (*Id*. at p. 380.) Neither boy was able to provide the administrator with a school pass before the search, the administrator was aware of marijuana activity within the restroom, and Bobby appeared to be nervous. (*Ibid*.) The administrator asked Bobby to empty his pockets, and after a search he found two cigarettes that appeared to contain marijuana and a bindle that was stipulated to contain a gram of cocaine. (*Ibid*.) Bobby moved to suppress evidence, which the trial court denied. Relying on *T.L.O*., *supra*, 469 U.S. 325, the appellate court determined that the search was justified at its inception. (*Bobby B*., *supra*, at p. 382.)

Like in *Bobby B*., there were multiple circumstances that justified Silva's search of minor's backpack. As explained above, Silva did not simply rely on minor's furtive gestures.[5] Therefore, we conclude the trial court did not err when it denied minor's motion to suppress.

policy allowed for searches of a student's backpack if there were suspicions the student was violating the rules. Therefore, our analysis still turns on whether there was a reasonable suspicion to justify the search under the circumstances. Furthermore, the issue of whether minor's expectation of privacy was diminished due to this policy is of no moment, because we conclude the warrantless search of minor's backpack was justified under the relevant Fourth Amendment jurisprudence.

[5] Minor argues that "[t]o the extent *Bobby B*. conflicts with *William G*., it is also worth noting that the Court of Appeal in *Bobby B*. did not have the benefit of the Supreme Court's guidance in *William G*., as the latter was decided several months after *Bobby B*." While minor is correct that *Bobby B*. was decided before *William G*., we do not find the cases are in conflict. *William G*. held that a minor's furtive gestures-- standing alone--could not justify a search. (*William G*., *supra*, 40 Cal.3d at p. 566.) As stated in *Bobby B*., there were several circumstances that justified the administrator's search, which was not based solely on Bobby's nervous demeanor. (*Bobby B*., *supra*, 172 Cal.App.3d at p. 382.)

2. *Probation Condition*

Next, minor challenges the probation condition that states: "You shall not visit or remain in any SPECIFIC locations known by you to be identified as gang gathering areas, areas where gang members or associates are congregating or areas specified by your Probation Officer as involving gang related activity, nor shall you participate in any gang activity." Minor claims the condition requires modification because it does not provide him fair notice of what activity is prohibited since the phrases "areas where gang members or associates are congregating" and "gang activity" are vague. He also insists the condition requires an express knowledge requirement to render it constitutional.

"A court of appeal may review the constitutionality of a probation condition, even when it has not been challenged in the trial court, if the question can be resolved as a matter of law without reference to the sentencing record. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889 (*Sheena K.*).) Our review of such a question is de novo." (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1345.)

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid*.) That is, the defendant must know in advance when he may be in violation of the condition. "[T]he law has no legitimate interest in punishing an innocent citizen who has no knowledge" that he or she may be violating a probation condition. (*People v. Freitas* (2009) 179 Cal.App.4th 747, 752.)

First, we address minor's arguments regarding the first part of the challenged condition, which prohibits him from visiting or remaining in specific locations known to him to be gang gathering areas or areas of gang activity.

8

Defendant argues this court's decision in *In re H.C.* (2009) 175 Cal.App.4th 1067 requires modification of his probation condition. The minor in *H.C.* objected to a condition requiring him to " 'not frequent any areas of gang related activity and not participate in any gang activity.' " (*Id.* at p. 1072.) This court found two areas of vagueness in this condition. First, we concluded that the word " 'frequent' " would be "especially challenging to understand" and noted that from plain wording of the condition "the minor would not violate the condition with one or two visits, yet we glean from the record that the trial court intended the minor not to visit such areas at all." (*Ibid.*) Second, we reasoned "[a]n area with 'gang related activity' might be, in some instances, an entire district or town. It would be altogether preferable to name the actual geographic area that would be prohibited to the minor and then to except from that certain kinds of travel, that is, to school or to work. At the very least, the condition . . . should be revised to say that the minor should not visit any area known to him to be a place of gang-related activity." (*Ibid.*) We then remanded the case to the trial court so it could more closely tailor the condition to be consistent with *In re Sheena K.*, *supra*, 40 Cal.4th at page 890.

*H.C.* does not stand for the proposition that the phrase "areas of gang related activity" is inherently unconstitutionally vague or overbroad. Although this court noted it would be preferable if the trial court listed specific geographic areas the minor was to avoid, we also concluded that inclusion of a knowledge requirement would sufficiently provide the minor notice about what specific locations are prohibited.

Consistent with the reasoning set forth in *H.C.*, this court has modified similar probation conditions to include a scienter element. In *People v. Leon* (2010) 181 Cal.App.4th 943, we modified a condition that stated " 'You're not to frequent any areas of gang-related activity' " to " 'You are not to visit or remain in any specific location which you know to be or which the probation officer informs you is an area of criminal-street-gang-related activity.' " (*Id.* at p. 952.)

9

Similarly, in *People v. Barajas* (2011) 198 Cal.App.4th 748, we concluded that no modification was necessary to a challenged probation condition that stated: " 'You're not to visit or remain in any specific location which you know to be or which the probation officer informs you to be an area of criminal street gang-related activity.' " (*Id.* at p. 754.) We determined the condition was not impermissibly vague because "[t]he knowledge condition suffices to give defendant fair warning of what areas to avoid and ensures that he will not be found in violation due to a factual mistake, accident, or misfortune." (*Id.* at p. 760.)

The reasoning set forth in *Barajas* applies here. We are confident the requirement that minor refrain from remaining in or visiting specific locations either *known* to him to be gang gathering areas, or those places that are specified by his probation officer to be gang gathering areas, will give minor sufficient warning of prohibited places. The inclusion of the phrase "areas where gang members or associates are congregating" does not render the condition unconstitutional.

Furthermore, we reject minor's contention that this clause lacks a knowledge requirement. The condition states the minor is prohibited from "visit[ing] or remain[ing] in any SPECIFIC locations *known by you* to be identified as gang gathering areas, areas where gang members or associates are congregating or areas specified by your Probation Officer as involving gang related activity . . . ." (Italics added.) Indeed, the phrase "locations known by you" must be interpreted as modifying all of the subsequent area descriptions, including "gang gathering areas," "areas where gang members or associates are congregating," and "areas specified by your Probation Officer as involving gang related activity." Accordingly, each location minor is required to refrain from remaining or visiting is subject to an express knowledge requirement, and we are satisfied that this

10

language would prevent minor from mistakenly violating the condition due to a factual mistake.[6]

However, we do find one area of vagueness. The term "gang" was not defined by the juvenile court in the challenged condition. "Although 'gang' has in the recent past likely acquired generally sinister implications, the word has considerable benign connotations." (*People v. Lopez* (1998) 66 Cal.App.4th 615, 631 (*Lopez*).) But in the context of a criminal probation condition, "it is apparent the word was intended to apply only to associations which have for their purpose the commission of crimes." (*Id*. at p. 632.) Nonetheless, in order to alleviate potential concerns over vagueness, we modify the challenged condition to expressly refer to the statutory definition of a "criminal street gang" in Penal Code section 186.22, subdivision (f). (*Lopez, supra*, at pp. 632-634, 638.)

Next, we address minor's argument that the second part of the challenged condition, which prohibits him from participating in gang activity, requires modification. Minor argues the condition must be modified to provide him notice as to what would be construed as a "gang activity." We disagree.

In the context of the probation condition at issue, the phrase "gang activity" is reasonably understood to be activity conducted for the benefit of, at the direction of, or in association with a criminal street gang. (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116-1117 [when considered in context, language in a probation condition

---

[6] In his reply brief, minor suggests the condition be modified so minor is prohibited from "*knowingly* go[ing] to 'areas where gang members or associates are gathering.' " However, this portion of the condition already contains an express knowledge requirement--that minor may not visit or remain in specific places *known to him* to be identified as related to gang activity--the addition of a second knowledge requirement is unnecessary. The language of the condition already makes it clear that minor does not violate the condition if he unwittingly passes through a location with gang activity. He would only be violating the condition if he *visited* or *remained* in the proscribed locations, which he must affirmatively *know* are prohibited areas.

may have "constitutionally sufficient concreteness"]; Pen. Code, § 186.22.) Accordingly, no modification is necessary to render the term "gang activity" sufficiently precise. We do not believe the term is susceptible to an interpretation that would prohibit minor from engaging in lawful activities that merely have other gang members in attendance.

However, minor insists in his reply brief that at the very least, the condition should be modified to include a knowledge requirement so minor would be prohibited from "*knowingly* 'participat[ing] in gang activity.' " Although we find it unlikely that a probation officer would deem passive conduct to be a violation of this condition, out of an abundance of caution we will modify the condition to include an express knowledge requirement. This will provide minor with clear notice as to what conduct will constitute a violation of his probation. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

## DISPOSITION

The challenged probation condition is modified to read: "You shall not visit or remain in any SPECIFIC locations known by you to be identified as gang gathering areas, areas where gang members or associates are congregating or areas specified by your Probation Officer as involving gang related activity, nor shall you knowingly participate in any gang activity. For purposes of this condition, 'gang' refers to a criminal street gang as defined by Penal Code section 186.22, subdivision (f)."

As modified, the order is affirmed.

12

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.



_____
Elia, J.