Filed 5/24/16  In re J.J. CA1/5
Received for posting 5/25/16

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.J., <br><br> Defendant and Appellant. | A145400 <br><br> (Contra Costa County Super. Ct. No. J14-0216) |

Appellant J.J. was declared a ward of the juvenile court after he entered a no contest plea to a misdemeanor count of possessing brass knuckles in violation of Penal Code section 21810.  (Welf. & Inst. Code, § 602.)  He challenges the denial of his motion to suppress, arguing the evidence against him was discovered during an unlawful search by his school principal upon his return to campus.  (Welf. & Inst. Code, § 700.1)  We affirm.

## I.  FACTS AND PROCEDURAL HISTORY

Carol Adams was the principal of Vincente High School, which is located on F Street in Martinez.  Appellant, who was then 16 years old, was a student at the school.  On October 3, 2014, Adams searched appellant's backpack and discovered marijuana and a butterfly knife.  The search also prompted appellant to remove a set of brass knuckles from his pocket.

1

The People filed a juvenile wardship petition alleging appellant, then 16 years old, had committed three misdemeanor offenses: possessing marijuana at a school (Health & Saf. Code, § 11357, subd. (e)), possessing a weapon (butterfly knife) on school grounds (Pen. Code, § 626.10, subd. (a)), and possessing a deadly weapon (brass knuckles) (Pen. Code, § 21810). Appellant filed a motion to suppress evidence under Welfare and Institutions Code section 700.1, arguing the search conducted by Adams was unlawful.

Adams was the only witness at the hearing on the suppression motion. She testified that on the morning of the search, she received a text message on her cell phone from a neighbor advising her some students were off campus at the end of E Street next to the creek that ran through the area. Adams explained that she gave her cell phone number to neighbors who called the school to report students who were outside the grounds during school hours, and she had recently received a lot of texts from this neighbor regarding the E Street location. This "E Street neighbor" had originally called Adams with concerns about students congregating on E Street "continually" during school hours, and often complained the students were smoking marijuana.[1] In this particular instance, the neighbor did not say in her text that the students were smoking. Sometimes when neighbors reported students smoking marijuana, Adams found them smoking cigarettes; sometimes the students were gone from the location by the time she arrived. She had never personally observed students smoking marijuana on E Street.

Adams walked to the end of E Street where she saw appellant and another student sitting on a metal barrier. It was about 9:15 a.m. and the two students were talking. She invited them to walk back to school and they accompanied her back to her office. Appellant was "very cooperative." Adams did not smell marijuana, nor had appellant said anything about carrying marijuana.

Once inside her office, Adams told appellant she was going to search his backpack. She explained: "I have this routine when I do—when I find students off of

---

[1] Adams noted that "every" neighbor who would text or call about off-campus students would say they were smoking marijuana.

2

campus. If they're coming back on campus, I want to make sure that they don't have anything they're not supposed to have. So I looked in his backpack and asked him to empty his pockets." Adams did not ask appellant for permission to search because "I don't have to ask permission when I have a suspicion." She was suspicious of appellant because "[w]hen students are suppose[d] to be in school and they're not in school and they're off school property, in my experience they're doing something that they're not supposed to be doing. Otherwise, they would be in school." She searched students who had been off campus because she wanted to make sure her school was safe.

Appellant was "very cooperative" and allowed Adams to look in his backpack. Adams found marijuana and paraphernalia along with a butterfly knife. She told appellant she needed to call the police and he told her "I have something else" before taking some brass knuckles out of his pocket and putting them on the table.

The juvenile court denied the suppression motion. "[T]he question is whether or not, given [Adams's] experience with young people who leave campus and in particular congregate in this area to engage in smoking marijuana, smoking cigarettes, all things which are violations of school rules, if that experience and her duties to ensure the safety and well-being of the kids in her charge and on her school campus is sufficient to make this a reasonable search. And I don't think there's a case right on point and it's a very close question. [¶] I have to say that I'm persuaded by the testimony of the witness and in my looking at the cases and the two-step analysis that has to be conducted, that in this particular case I think the search was reasonable. And I believe that the principal articulated what her suspicion was, what her obligations are and that she went about the search in a very reasonable, least intrusive manner under the circumstances. [¶] So in this case I do find that the People have met their burden and the motion is denied."

## II. STANDARD OF REVIEW

When reviewing a ruling denying a motion to suppress evidence, we exercise our independent judgment to determine whether, on the facts found by the court, the search was reasonable under the Fourth Amendment of the United States Constitution. (*In re*

3

*Lisa G.* (2004) 125 Cal.App.4th 801, 805.) We uphold the trial court's findings of facts when supported by substantial evidence. (*Ibid.*)

### III. DISCUSSION

Students have a legitimate expectation of privacy in their persons and in the personal effects they bring to school, and the Fourth Amendment protects public school students from unreasonable searches and seizures by campus personnel. (*New Jersey v. T.L.O.* (1985) 469 U.S. 325, 334–335 (*T.L.O.*); *In re Randy G.* (2001) 26 Cal.4th 556, 567.) But, in light of the special needs of the public schools, neither a warrant nor probable cause is necessary to authorize such a search. (*T.L.O.* at pp. 340–341.) "[T]he accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. *Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.*" (*Id.* at p. 341, italics added.)

Courts have generally distinguished between two types of public school searches: (1) searches predicated on individualized suspicion of a particular student (*T.L.O.*, at pp. 342–343; *In re Bobby B.* (1985) 172 Cal.App.3d 377, 380–382 [students suspected of smoking or drug use were properly searched]); and (2) "special needs" administrative searches, conducted without individualized suspicion (*Board of Education of Independent School District No. 92 of Pottawatomie County et al. v. Earls* (2002) 536 U.S. 822, 828–838 (*Earls*); *Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 652–666 (*Vernonia*) [suspicionless drug testing programs for students engaging in athletics and extracurricular activities upheld]; *In re Sean A.* (2010) 191 Cal.App.4th 182, 187–188 (*Sean A.*) [upholding search pursuant to policy requiring search of all students who leave campus and return during the school day]; *In re Latasha W.* (1998) 60 Cal.App.4th 1524, 1527 (*Latasha W.*) [upholding random weapons screening of students with hand-held metal detector]). Searches in the latter category "are part of a larger body of law holding that 'special needs' administrative searches, conducted without individualized suspicion,

4

do not violate the Fourth Amendment where the government need is great, the intrusion on the individual is limited, and a more rigorous standard of suspicion is unworkable." (*Latasha W.*, at p. 1527.)

Appellant argues the search of his backpack was unreasonable under either theory, because it was unsupported by reasonable suspicion and did not meet the constitutional requirements necessary for a suspicionless search. The People contend Adams reasonably suspected appellant was carrying contraband in light of his presence off campus in an area where students reportedly smoked marijuana, and alternatively argue the search may be upheld because Adams had a "policy" of searching students who leave the campus during school hours before allowing them to return.

We are doubtful the search can be upheld as a suspicionless administrative search. We note that while Adams's testified she had a "routine" of searching students she found off campus, there was no evidence suggesting this personal practice had been memorialized into a generally applicable official school policy such as those in effect in cases approving suspicionless school searches. (Compare *Earls*, *supra*, 536 U.S. at pp. 825–828; *Vernonia*, *supra*, 515 U.S. at pp. 648–650; *Sean A.*, *supra*, 191 Cal.App.4th at pp. 185, 188–189; *Latasha W.*, *supra*, 60 Cal.App.4th at p. 1525.) Moreover, Adams testified she searched appellant because she was suspicious. This made the search less of an implementation of "policy" and more of an act of discretion, even if Adams would have harbored the same suspicions as to any student discovered off campus and would have exercised her discretion consistently. "Exceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where 'other safeguards' are available 'to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field." ' " (*T.L.O., supra,* 469 U.S. at p. 342, fn. 8.)

We are satisfied, however, that Adams possessed a reasonable individualized suspicion adequate to support the search. The United States Supreme Court has described this standard as being met when there is "a moderate chance of finding evidence of wrongdoing." (*Safford Unified School Dist. No. 1 v. Redding* (2009) 557

5

U.S. 364, 371 (*Safford*).)  The determination of reasonableness "involves a twofold inquiry:  first, one must consider 'whether the . . . action was justified at its inception,' [citation]; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' [citation].  Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.  Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." (*T.L.O.*, *supra*, 469 U.S. at pp. 341–342.)

In this case, the search was justified at its inception because Adams had reasonable grounds for suspecting it would reveal evidence of a crime or a violation of school rules. Appellant was discovered off campus during school hours in a location where students were frequently reported to be smoking marijuana.  Although Adams had not personally observed students smoking marijuana there, she had discovered students off campus smoking tobacco.  Possession of marijuana by a minor is a misdemeanor and possession of tobacco is an infraction; presumably, either would be a violation of school rules. (Health & Saf. Code, § 11357, subd. (e); Pen. Code, § 308, subd. (b).)  Though the neighbor who texted Adams did not mention whether the students were smoking, Adams could reasonably suspect this was appellant's purpose for being there, and she had a "moderate chance" of finding evidence of that activity among his personal effects. (*Safford*, *supra*, 557 U.S. at p. 371; see *T.L.O.*, *supra*, 469 U.S. at pp. 342–347 [reasonable to search purse for cigarettes when student accused of smoking in school lavatory]; *Bobby B.*, *supra*, 172 Cal.App.3d at pp. 380–382 [reasonable to search minor who was in campus restroom without a hall pass when minor appeared nervous and restrooms had been a location of drug activity].)

Appellant argues his case is analogous to *In re William G.* (1985) 40 Cal.3d 550 (*William G.*), in which the court concluded an assistant high principal did not have

6

reasonable suspicion to search a calculator case carried by a student that had "an odd-looking bulge" and was discovered to contain marijuana and paraphernalia. (*Id*. at p. 555.) We are not persuaded. The defendant in *William G.* was stopped while he was walking on campus with two other students at about 1:10 p.m. (*Id*. at p. 555.) Although classes were in session, the defendant did not have any classes after 12 noon. (*Ibid.*) The defendant attempted to hide the calculator case behind his back and told the assistant principal he needed a warrant to see it. (*Ibid*.) The court concluded the defendant's "furtive gestures" in attempting to hide the case were not enough to justify a search when the assistant principal had no information connecting the defendant to drugs and the defendant's demand for a warrant was merely an assertion of his constitutional rights. (*Id*. at pp. 566–567.)

Appellant seizes on the *William G.* court's comment that the assistant principal's "suspicion that William was tardy or truant from class provided no reasonable basis for conducting a search of any kind." (*William G.*, *supra*, 40 Cal.3d at p. 566.) That may be true in a case where a student is simply found on campus out of class, without information connecting the student to a violation of a law or school rule for which the search was intended to obtain evidence. Here, however, appellant was not simply tardy or truant on campus, he was found off campus in an area frequented by students who smoked. Under the totality of the circumstances, Adams knew appellant had violated school rules and had a reasonable suspicion he was carrying cigarettes or marijuana. (Compare *Lisa G.*, *supra*, 125 Cal.App.4th at pp. 807–808 [teacher improperly searched purse of student who was defiant in class for the asserted purpose of finding her identification; there were no facts supporting a suspicion the student had a weapon or other prohibited item in her purse and she had not been given the chance to voluntarily produce identification].)

We also reject appellant's argument the search was unreasonable in its scope "because Adams's discretion to search students under her unwritten personal policy was totally without limits." We are not at this juncture concerned with what Adams *might* have done, consistent with her usual practice, as we would be when evaluating a

7

suspicionless administrative search conducted under a school policy.  (See *T.L.O.*, *supra*, 469 U.S. at p. 342, fn. 8.)  Rather, we ask whether the method actually employed by Adams was "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." (*T.L.O.*, *supra*, 469 U.S. at pp. 341–342.)  This standard was satisfied here, where Adams did not put her hands on appellant, but merely looked in his backpack and asked him to empty his pockets.  (Contrast *Safford*, *supra*, 557 U.S. at pp. 375–377 [student's suspected drug dealing did not justify strip search].)

IV.  DISPOSITION

The judgment is affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.

(A145400)