[No. D044398. Fourth Dist., Div. One. Dec. 14, 2004.]

In re LISA G., a Person Coming Under the Juvenile Court Law. THE PEOPLE, Plaintiff and Respondent, v.
LISA G., Defendant and Appellant.

## COUNSEL

Valoree Wortham, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Daniel Rogers, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**McDONALD, J.**—On January 16, 2004, the District Attorney for the County of San Diego filed a wardship petition under Welfare and Institutions Code section 602 charging Lisa G., a minor, with one count of possession of a knife on school grounds (Pen. Code, § 626.10, subd. (a)) (count one) and one count of carrying a knife on her person (Pen. Code, § 653k) (count two). Lisa denied the allegations.

On April 28, 2004, the court denied Lisa's motion to suppress evidence. Lisa then admitted the allegation as to count one, and the court granted the district attorney's motion to dismiss count two. The court declared Lisa a ward of the court and placed her on probation for one year.

Lisa appeals the trial court's denial of her motion to suppress evidence under Welfare and Institutions Code section 700.1. She contends: (1) her legitimate expectation of privacy was violated when her purse was searched by her teacher, (2) the search was not justified at its inception because the teacher did not have reasonable suspicion of wrongdoing, and (3) the evidence obtained from the unlawful search of her purse should be excluded as fruit of the poisonous tree.

## FACTS

On September 22, 2003, Lisa began school at San Diego High School. Andrea Craig was her fourth period teacher. Lisa gave Ms. Craig her schedule showing she was enrolled in the class. During class certain students, including Lisa, were disruptive. While Ms. Craig was telling the students to sit down and do their work, Lisa stood up and said she had to go to the bathroom. Ms. Craig would not release her from the classroom. For some time, Lisa stayed in class and was not disruptive, but she became "agitated and insistent" and kept saying she had to go. Lisa stood up and said she was going "to go right [t]here" in the classroom. Ms. Craig thought Lisa was attempting to disrupt the class and refused to release her. Ms. Craig was unaware there was information at the nurse's office directing school officials to permit Lisa to go to the bathroom at any time because of her medical condition.

Lisa walked toward the classroom door, and Ms. Craig blocked the door with her hand. Lisa cursed at Ms. Craig and moved Ms. Craig's hand away from the door handle. Lisa walked out of the classroom, leaving her purse on her desk. Ms. Craig put Lisa's purse on her desk "for [Lisa's] safety." Lisa returned to the classroom, but the door was locked and she could not reenter the classroom. Ms. Craig was aware Lisa was standing outside the classroom door unable to reenter the classroom.

At the end of the class period Ms. Craig dismissed the other students and decided to write a disciplinary referral for Lisa's behavior and disruption. Ms. Craig did not recall Lisa's name or student identification number, so she opened Lisa's purse to see if her schedule or identification was in it. Ms. Craig saw a knife in Lisa's purse. She closed the purse and called security to come to the classroom.

## DISCUSSION

Lisa contends the trial court erred by denying her Welfare and Institutions Code section 700.1 motion to suppress evidence of the knife found in her purse. The question of whether evidence should be excluded from criminal proceedings involves two discrete inquiries: (1) whether the evidence was seized in violation of the Fourth Amendment, and (2) whether the exclusionary rule is the appropriate remedy for the violation. (*In re William G.* (1985) 40 Cal.3d 550, 567 [221 Cal.Rptr. 118, 709 P.2d 1287].)

When reviewing a ruling on a motion to suppress evidence, we first determine whether the trial court's factual findings, express or implied, are supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) We then exercise our independent judgment to determine whether, on the facts found by the court, the search was reasonable under the Fourth Amendment. (*Ibid.*)

### I

Lisa contends Ms. Craig's search of her purse was unlawful under the Fourth Amendment. Public school officials are government agents within the purview of the Fourth Amendment. (*In re William G., supra,* 40 Cal.3d at p. 561.) Therefore, their conduct is subject to the constitutional rights of their students against unreasonable searches and seizures. (*Ibid.*)

The legality of a search of a student depends on the reasonableness under all of the circumstances of the search. (*New Jersey v. T.L.O.* (1985) 469 U.S. 325, 341 [83 L.Ed.2d 720, 105 S.Ct. 733].) Determining the reasonableness of a search is a two-fold inquiry: (1) whether the search was justified at its inception, and (2) whether the scope of the search, as actually conducted, was reasonably related to the circumstances that justified the initial search. (*Ibid.*)

■ Lisa contends Ms. Craig's search of her purse was not justified at its inception. Ordinarily, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting the search will disclose evidence the student has violated or is violating the law or school rules. (*New Jersey v. T.L.O., supra,* 469 U.S. at pp. 341–342.) "There must be articulable facts supporting that reasonable suspicion. Neither indiscriminate searches of lockers nor more discreet individual searches of a locker, a purse or a person . . . can take place absent the existence of reasonable suspicion. Respect for privacy is the rule—a search is the exception." (*In re William G., supra,* 40 Cal.3d at p. 564.)

In *William G.,* a search by a school official of a student he suspected was tardy for class disclosed contraband. (*In re William G., supra,* 40 Cal.3d at p. 555.) The student was carrying a calculator case the school official thought had an odd-looking bulge. (*Ibid.*) After several unsuccessful attempts to obtain the student's consent to examine the case, the school official forcefully took the case and searched it. The case contained marijuana, a scale, and Zigzag cigarette papers. (*Ibid.*) The school official had no prior knowledge or information the student possessed, used or sold drugs. (*Ibid.*) The court held there were no articulable facts to support a finding of reasonable suspicion the student was engaged in proscribed activity justifying a search. (*Id.* at p. 566.) The school official's suspicion the student was tardy for class did not provide a reasonable basis for conducting a search of the student's property. (*Ibid.*)

■ In contrast, in *New Jersey v. T.L.O., supra,* 469 U.S. at pages 332–333, the court held a search of a student by a school official was reasonable under the Fourth Amendment. In that case, a teacher found a 14-year-old high school freshman and her companion smoking cigarettes in the school restroom in violation of a school rule. (*Id.* at p. 328.) After the student denied smoking in the restroom, a school official demanded to see her purse. (*Ibid.*) He opened the purse and found cigarettes.[1] (*Ibid.*) The court held the search was justified at its inception because a report had been made the student was smoking. This warranted a reasonable suspicion the student had cigarettes in her purse, and thus violated the school rule against smoking in the restroom.

---

[1] *New Jersey v. T.L.O.* also involved a subsequent search of her purse that revealed marijuana and other evidence suggesting the student was engaged in drug dealing. We only rely on the first of the two searches, as the only relevant issue here is whether the initial search was justified at its inception.

(*Id.* at p. 345.) Unlike *In re William G., supra*, 40 Cal.3d 550, the reasonable suspicion in *New Jersey* had its source in prior information that the student had violated the school rule for which the search was intended to obtain evidence. The search was thus justified because the school official had information the student had engaged in a prohibited activity, evidence of which could be obtained by a search of the student's purse. A correlation between the wrongful behavior of the student and the intended findings of the search is essential for a valid search of the student under the Fourth Amendment.

In the instant case, Ms. Craig admitted she opened Lisa's purse to find an identification document so she could write a referral for Lisa's disruptive behavior. There are no facts in the record suggesting Ms. Craig had any suspicion Lisa had engaged or was engaging in any proscribed activity justifying a search. There was no suspicion Lisa had a knife or other prohibited item in her purse that justified Ms. Craig opening it. The only misbehavior Lisa engaged in was being disruptive in class. Mere disruptive behavior does not authorize a school official to rummage through his or her students' personal belongings.

The People argue the limited search of Lisa's purse for identification purposes was justified at its inception. They contend because of Lisa's defiant behavior Ms. Craig was justified in writing a referral, and therefore she needed Lisa's identification. They cite several cases in support of their proposition.

In *In re Arturo D.* (2002) 27 Cal.4th 60, 65 [115 Cal.Rptr.2d 581, 38 P.3d 433], the Supreme Court held when a driver detained for a citation of a Vehicle Code infraction is unable to produce vehicle registration or personal documentation on the request of the citing police officer, the Fourth Amendment permits a warrantless search of areas within a vehicle where identifying documentation reasonably may be expected to be found.

Likewise, in *People v. Hart* (1999) 74 Cal.App.4th 479, 484 [86 Cal.Rptr.2d 762], the court upheld a search of a purse inside a van for identification purposes. In *Hart*, a police officer asked the defendant for identification. (*Ibid.*) After the defendant searched the floor of the van for several minutes, the officer asked the defendant to step out of the van. (*Ibid.*) Because the officer was concerned for his safety, he searched the van for weapons. (*Id.* at p. 485.) During his search he noticed a purse, which he searched for identification purposes. (*Ibid.*) The court evaluated the search

under standards of reasonableness by assessing the intrusion of the search on the defendant's privacy against the degree to which the search was necessary to promote a legitimate government interest. (*Id.* at p. 489.) Because the defendant was detained, the court held she was obligated to identify herself. (*Id.* at p. 488.) Further, officer safety can warrant an officer retrieving the driver's license rather than allowing the driver to retrieve the identification him-or herself. (*Id.* at p. 489.)

■ The People's reliance on these cases is not persuasive because in each, an identification search was permitted *after* the suspect refused to produce identification under circumstances in which the suspect was legally required to produce identification. Here, Lisa did not refuse a request to produce her identification; she was never asked by Ms. Craig to produce identification although she was available at the classroom door. Further, "there is nothing more than a reduced expectation of privacy in the contents of a vehicle. Occupants 'possess a reduced expectation of privacy with regard to the property that they transport in cars.' " (*People v. Hart, supra,* 74 Cal.App.4th at p. 490.) On the other hand, students in public schools have a legitimate expectation of privacy in the personal effects they bring to school. (*In re Cody S.* (2004) 121 Cal.App.4th 86, 91 [16 Cal.Rptr.3d 653].) They may "carry with them a variety of legitimate, noncontraband items, and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds." (*New Jersey v. T.L.O., supra,* 469 U.S. at p. 339.) We conclude Ms. Craig's initial limited search of Lisa's purse for identification was unreasonable under the Fourth Amendment.

## II

■ The second inquiry for determining whether evidence should be excluded from a criminal proceeding is whether the exclusionary rule is the appropriate remedy for the violation. The court determined in *William G.* that the exclusionary rule is the only appropriate remedy for a Fourth Amendment violation when the evidence is sought to be admitted in a juvenile or criminal prosecution. (*In re William G., supra,* 40 Cal.3d at p. 567.) Having determined the evidence was seized in violation of Lisa's Fourth Amendment rights, the trial court erred in denying her motion to suppress the evidence. Without that evidence there is no evidence to support Lisa's conviction of possession of a knife on school grounds.

## DISPOSITION

The judgment is reversed.

McConnell, P. J., and Aaron, J., concurred.

On January 10, 2005, the opinion was modified to read as printed above.