Filed 11/30/22  In re J.V. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re J.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.V., <br><br> Defendant and Appellant. | E078596 <br><br> (Super.Ct.No. J291399) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  Charles, J. Umeda, Judge.  Affirmed.

Heather E. Shallenberger, by appointment of the Court of Appeal, for Defendant and Appellant.

1

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

On November 24, 2021, the People filed a wardship petition alleging that J.V., then age 14, unlawfully possessed a knife on school grounds. (Pen. Code, §§ 602, subd. (a), 626.10, subd. (a)(1).)[1] After the court denied J.V.'s motion to suppress evidence that a knife was found in J.V.'s backpack, the parties entered into a plea agreement. Pursuant to the agreement, the court reduced the allegation to a misdemeanor and J.V. admitted the allegation. The court then found the amended allegation true and placed J.V. on six months "nonward" summary probation. (Welf, & Inst. Code, § 725, subd. (b).)

J.V. appeals, claiming his motion to suppress was erroneously denied for two reasons: (1) an assistant school principal, Mr. H., unlawfully detained J.V. before searching J.V.'s backpack, and (2) the search of the backpack was nonconsensual and unsupported by a reasonable suspicion that the search would reveal evidence that J.V. had violated a law or school regulation. We conclude the motion was properly denied.

## II. FACTUAL BACKGROUND

Mr. H. and J.V. testified at the February 2, 2022 hearing on J.V.'s motion to suppress the evidence of the knife found in J.V.'s backpack.

---

[1] Undesignated statutory references are to the Penal Code.

A. *Mr. H.'s Testimony*

On September 30, 2021, J.V. was a student at a high school where Mr. H. was an assistant principal in charge of supervision and discipline. That morning Mr. H. received a radio call and responded to a classroom in which he broke up a fight between two students, not including J.V. The fight occurred in J.V.'s piano class, and there was "blood everywhere."

Mr. H. testified that "we" brought one of the students involved in the fight into "a classroom right across the hallway" from the classroom where the fight occurred. The student was "being very defiant. He was spitting on our campus officer. He was punching and kicking our campus officer. He ended up being handcuffed" and brought "up to the front office." The other student involved in the fight was brought into the hallway. In the hallway after the fight, Mr. H. was "trying to calm the situation . . . with the kids that were around there and get the other kids back to class." Mr. H. was still trying to "deescalate the situation" during the "passing period" while students were going to their the next classes.

During the passing period, Mr. H. noticed that J.V. and another student "continued to mill about" in the hallway near where the fight occurred "and not get to class." Based on what he observed, Mr. H. believed J.V. was or could have been "congenially" though not physically "involved" in the fight. Mr. H. also testified that, as the handcuffed student was being brought to the front office, J.V. "and another young man were sauntering in the direction of the classroom, not even going very quickly, and we thought they were recording the situation." Mr. H. later clarified, on cross-examination, that J.V.

3

and the other student were "walking across the quad slowly, watching the other young man who was in handcuffs being brought to the front. . . . [T]hen, they were kind of standing and watching."

When asked what made him believe that J.V. and the student with J.V. were recording the incident, Mr. H. responded, "Because that's what kids do." On prior occasions, Mr. H. had contacted other students whom he had observed recording school fights. Mr. H. explained that recording school fights "causes concern because when those things get to social media or when they get out there, it gives the impression that we are not running a safe campus, and we don't have a safe school. So we want to try to eliminate students posting fights on social media." Such postings had caused "issues" "in terms of parent communication and parent concern," and there was "a school concern for [the] safety of students if fights are uploaded to social media." In this particular case, Mr. H. contacted J.V. because "[w]e wanted to make sure that they were not videotaping and sharing what had happened in that piano class and, then, the subsequent student being brought up in handcuffs."

When asked to describe what happened when he contacted J.V., Mr. H. testified that J.V. "finally made his way into a building with the other young man. I had lost visual on both of those students. I didn't know his [J.V.'s] name at the time. I didn't know where he was going. [¶] About a minute later, they walked out and were going in the direction of the bathroom." Mr. H. approached J.V. and the other student, asked J.V. where he, J.V., was going, and J.V. said he was going to the restroom. Mr. H. told J.V. he would walk J.V. to the restroom, "then we are going to walk back to class." Mr. H.

4

waited outside the restroom while J.V. was in the restroom for fewer than 20 seconds. After J.V. left the restroom, Mr. H. told J. V. "to get his stuff and to come with me."

Mr. H. then brought J.V. to the teacher's center, where he asked J.V.: " 'Young man, do you have a cell phone on you; were you recording that?' " J.V. said he did not have anything on him. J.V. pulled a pack of gum out of his pocket after Mr. H. said he " 'noticed' " a "square-looking thing" in J.V.'s pocket. J.V. then "voluntarily opened" the front pocket of his backpack and said, " 'I don't have a phone on me.' " But in the front pocket of the backpack, Mr. H. saw a "USB charger for a vape-type device" (vape charger). Mr. H. did not ask J.V. whether Mr. H. could look inside J.V.'s backpack.

The presence of the vape charger in the front pocket of J.V.'s backpack led Mr. H. to believe that J.V. had drug paraphernalia, "a vaping smoking pen," in his possession, and gave Mr. H. "probable cause to have the campus officer perform a search on [J.V.]" Possession of a vape smoking pen on school grounds is prohibited and constitutes grounds for suspension. After Mr. H. found the vape charger, Mr. H. and "one of the campus officers" escorted J.V. to Mr. H.'s office where they searched J.V. and found a knife in J.V.'s backpack. J.V. was "very respectful." Mr. H. did not see J.V. with a phone or recording device, and no phone or recording device was found in J.V.'s possession.

B. *J.V.'s Testimony*

J.V. witnessed the fight in his piano classroom. In the hallway after the fight, J.V. was telling the brother of one of the students involved in the fight what had happened and "why they fought and everything." J.V. and the other student turned and looked when

5

they saw the other student's brother being taken out in handcuffs, and they left the building when they saw Mr. H. come into the building. J.V. went to his next class, then he asked to leave the class to use the restroom.

When J.V. walked out of his class to use the restroom, he saw Mr. H. asking the student with whom J.V. was talking in the hallway whether that student "had video recording." Mr. H. then asked J.V. whether J.V. had a phone on him, and J.V. said he did not have a phone. Before J.V. went into the restroom, Mr. H. asked J.V. to "empty out [his] pockets." J.V. did so, but he only had a pack of gum. J.V. then went into the restroom while Mr. H. waited outside the restroom. After J.V. left the restroom, Mr. H. brought J.V. back to J.V.'s class where J.V. got his backpack, and then the two of them went to an office area. There, Mr. H. asked J.V. to open his backpack to see whether J.V. had a phone. J.V. then opened his backpack, revealing the vape charger. J.V. did not have a vape smoking pen. J.V. did not want to open his backpack but did so because he didn't want "anything to happen." J.V. said he "voluntarily complied" when Mr. H. asked him to open his backpack. Mr. H. did not search the backpack before Mr. H. saw the vape charger.

C. *The Court's Ruling*

Following the close of the evidence and counsel's arguments, the court took the matter under submission and later denied the motion. The court found that (1) Mr. H.'s detention and questioning of J.V. concerning whether J.V. had a phone or recording device in his possession and was recording the fight and the students

6

involved was not arbitrary, capricious, or harassing; (2) J.V. voluntarily opened his backpack, revealing the vape charger; and (3) Mr. H.'s subsequent search of the entire backpack was supported by a reasonable suspicion that J.V. had drug paraphernalia (a vape smoking pen) in the backpack, which was a violation of school policy. The court expressly found Mr. H.'s testimony more credible than J.V.'s testimony on the issue of how the backpack was first opened. The court found that J.V. opened the backpack to show Mr. H. that J.V. did not have a phone in the backpack, and Mr. H. did not ask or order J.V. to open the backpack.

### III. DISCUSSION

A. *Legal Principles and Standard of Review*

The Fourth Amendment, made applicable to the states through the due process clause of the Fourteenth Amendment, " 'guarantees "the people" "[t]he right . . . to be secure . . . against unreasonable searches and seizures . . . ." ' " (*People v Carter* (2005) 36 Cal.4th 1114, 1140; U.S. Const., 4th Amend.) A detention is a " 'seizure' " within the meaning of the Fourth Amendment. (See *People v. Glaser* (1995) 11 Cal.4th 354, 363.)

In ruling on a motion to suppress evidence obtained in violation of the Fourth Amendment, the trial court is vested with the power to assess witness credibility, resolve evidentiary conflicts, weigh the evidence, and draw factual inferences. (*People v. Tully* (2012) 54 Cal.4th 952, 979; *In re Edgerrin J.* (2020) 57 Cal.App.5th 752, 759.) On appeal, we defer to the court's factual findings, express or implied, if substantial evidence supports them. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) Based on these

findings, we independently determine whether the search or seizure was reasonable under the Fourth Amendment. (*People v. Brown* (2015) 61 Cal.4th 968, 975.)

B. *J.V. Was Lawfully Detained*

J.V. claims his motion to suppress the evidence of the knife found in his backpack was erroneously denied because the search of the backpack was the product of his unlawful detention. He claims Mr. H.'s detention of him for his suspected recording of the students involved in the fight was arbitrary and capricious because it was unsupported by a fair and substantial reason. Thus, he claims the detention violated his Fourth Amendment rights against unreasonable seizure or detention and his substantive due process rights under the Fourteenth Amendment.

A public school's power over its students is " 'custodial and tutelary, permitting a degree of supervision and control' " that cannot be exercised " 'over free adults.' " (*In re Randy G.* (2001) 26 Cal.4th 556, 562.) Public school officials do not need "articulable facts supporting reasonable suspicion" that a student has violated a law or school policy in order to detain the student on school grounds. (*Id*. at p. 566.) Instead, the test for whether public school officials' "infringement on the residuum of liberty retained by the student" constitutes an unlawful seizure or detention under the Fourth Amendment, or a deprivation of substantive due process under the Fourteenth Amendment, is "whether the school officials' conduct was arbitrary, capricious, or undertaken for purposes of harassment." (*Randy G*., at pp. 565, 567.) "An action is arbitrary when it is based on no more than the will or desire of the decision-maker and not supported by a fair or substantial reason." (*Clack v. State* (1969) 275 Cal.App.2d 743, 747.)

8

J.V. claims his detention was "not supported by fair or substantial reason" because it "was based solely on [Mr. H.'s] unfounded suspicion that [J.V.] recorded the fight and/or the students involved." J.V. claims Mr. H.'s suspicion was unfounded because Mr. H. never saw J.V. with a phone or recording device or "act as though he were recording," and Mr. H. had never disciplined J.V. for violating any law or school regulation. Although J.V. concedes Mr. H. "could lawfully stop him to question him about whether he had recorded" the fight and the students involved, J.V. claims that once he explained to Mr. H. that he did not have a phone or recording device, Mr. H. "should have released him and returned him to class," rather than "detain [him] by escorting him to his classroom to retrieve his backpack and to the teacher's center for further questioning and arguably a search . . . ."

We find no merit to this claim. The record shows that Mr. H. acted with fair and substantial reason in detaining J.V. by having J.V. retrieve his backpack and accompany Mr. H. to the teacher's center for questioning and a possible search of the backpack for a phone or recording device. Based on his observations of J.V. and the other student in the hallway after the fight, Mr. H. reasonably suspected that J.V. had recorded the students involved in the fight and was going to post the recordings on social media, potentially resulting in more school fights and endangering student safety.

Even though Mr. H. did not see J.V. or the other student with a phone or recording device, the actions of J.V. and the other student in lingering in the hallway gave Mr. H. reason to suspect that J.V. and the other student "were recording the situation." In addition, on prior occasions, Mr. H. had observed other students recording other school

fights and had contacted those students. Thus, when asked why he believed J.V. and the other student were recording the "situation," Mr. H. reasonably responded, "Because that's what kids do."[2]

Mr. H. also explained why it was necessary to prevent students from recording school fights and posting the recordings on social media: Such postings make it appear that school officials are "not running a safe campus." There was also a "school concern for safety of students if fights are uploaded to social media." It is reasonable for school officials to be concerned that recordings of school fights, if posted on social media and otherwise disseminated in the community, can create false impressions that the school is unsafe, and at the same time exacerbate tensions among students, leading to more school fights and endangering student safety on campus.

Thus, substantial evidence shows that Mr. H.'s detention of J.V. was not arbitrary, capricious, or undertaken for purposes of harassing J.V. (*In re Randy G.*, *supra*, 26 Cal.4th at p. 565, 567.) Rather, the detention was supported by a fair and substantial reason: calming tensions among parents and students, preventing more school fights, and

---

[2] Mr. H. also testified that J.V. "had made contact with one of the young men that was [involved] in the fight initially," and that Mr. H. "later" saw "on video footage" that J.V. "and another young man had been communicating in the hallway." J.V. argues this court should "discount" or disregard these parts of Mr. H.'s testimony because Mr. H. made these observations only after reviewing video footage; thus, these observations could not have formed part of the basis for Mr. H.'s detention of J.V. We agree. It appears that Mr. H. viewed the video footage after he detained J.V. and searched J.V.'s backpack. Nonetheless, Mr. H.'s observations of J.V. and the other student in the hallway before Mr. H. viewed the video footage gave Mr. H. ample reason to suspect that J.V. and the other student were recording the students involved in the fight and justified Mr. H.'s detention of J.V.

safeguarding student safety. The detention did not violate J.V.'s Fourth or Fourteenth Amendment rights.[3]

B. *J.V.'s Backpack Was Lawfully Searched*

J.V. next claims that, even if his detention was lawful, the search of his backpack violated his Fourth Amendment right against unreasonable searches. He claims Mr. H. did not have reasonable grounds for suspecting that the search would disclose evidence that J.V. had violated or was violating a law or school regulation.

The legality of a search of a student depends on the reasonableness of the search under all of the circumstances. (*N.J. v. T.L.O.* (1985) 469 U.S. 325, 341.) Determining the reasonableness of a search is a two-fold inquiry: (1) whether the search was justified at its inception, and (2) whether the scope of the search, as actually conducted, was reasonably related to the circumstances of the search. (*In re Lisa G.* (2004) 125 Cal.App.4th 801, 805.)

"Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is

---

[3] J.V. suggests that Mr. H. acted arbitrarily or to harass J.V. when Mr. H. detained J.V. because the student who was with J.V. was not detained. The record does not support this claim. The record is silent on whether the other student was detained, searched, or consented to be searched for a phone or recording device. But the record shows that Mr. H. at least questioned the other student. J.V. testified that, when he was on his way to the restroom after he had gone to his next class after the fight, he saw Mr. H. asking the other student whether that student "had video recording." Thus, contrary to J.V.'s suggestion, the record does not establish that Mr. H. "singled out" J.V. for arbitrary treatment or harassment by detaining J.V.

11

violating either the law or the rules of the school." (*N.J. v. T.L.O.*, *supra*, 469 U.S. at pp. 341-342.) In other words, "searches of students by public school officials must be based on [an objectively] reasonable suspicion that the student or students to be searched have engaged, or are engaging, in a proscribed activity (that is, a violation of a school rule or regulation, or a criminal statute). There must be articulable facts supporting that reasonable suspicion." (*In re William G.* (1985) 40 Cal.3d 550, 564.)

We first identify the inception of the search. The People argue the backpack was not searched when J.V. voluntarily opened its front pocket, revealing the vape charger to Mr. H. Rather, the People argue, the search occurred *after* J.V. opened the front pocket revealing the vape charger, which gave Mr. H. reason to believe J.V. had a vape smoking pen in the backpack, a violation of school policy. We agree.

A " ' "search" is a governmental intrusion upon, or invasion of, a citizen's personal security in an area in which [the citizen] has a reasonable expectation of privacy.' " (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1014.) J.V. had a reasonable expectation of privacy in his backpack. (*In re Lisa G.*, *supra*, 125 Cal.App.4th at p. 808 ["[S]tudents in public schools have a legitimate expectation of privacy in the personal effects they bring to school."].)

But the court found that Mr. H. did not ask or direct J.V. to open his backpack before or after Mr. H. brought J.V. to the student center with his backpack. Instead, while Mr. H. was asking J.V. whether J.V. had a phone or recording device in his possession, J.V. "voluntarily opened" the front pocket of his backpack, revealing the vape

12

charger.[4]  "The mere observation of that which is in open view does not constitute a search."  (*People v. Jackson* (1961) 198 Cal.App.2d 698, 703.)

After J.V. opened the front pocket of his backpack, revealing the vape charger, Mr. H. had reason to suspect that J.V. had drug paraphernalia—a vape smoking pen—in the backpack, which is prohibited on school grounds.  Mr. H. and a campus officer then searched the backpack and found the knife.  The search was thus justified at its inception: at the time the backpack was searched, Mr. H. had reason to believe the backpack would contain drug paraphernalia.

The scope of the search—opening the entire backpack—was also reasonably related to the circumstances of or justification for the search.  (*In re Lisa G.*, *supra*, 125 Cal.App.4th at p. 805.)  Opening the entire backpack was reasonably related to determining whether the backpack contained a vape smoking pen or other contraband.  (*In re Cody S.* (2004) 121 Cal.App.4th 86, 93-94.)

J.V. claims the prosecution had the burden of showing he consented to the search of his backpack and did not meet this burden.  But the prosecution did not have the burden of proving that J.V. consented to the search of the backpack because the prosecution did not rely on J.V.'s consent to justify the search of the backpack.  (Cf. *People v. Zamudio*, *supra*, 43 Cal.4th at p. 341 ["Where, as here, the prosecution relies on

---

[4]  Although J.V. testified Mr. H. asked J.V. to open his backpack to see whether J.V. had a phone and that he then did so, the trial court found Mr. H's testimony more credible on the circumstances of the search.  We reiterate that it is the trial court that is vested with the power to assess witness credibility and resolve evidentiary conflicts.  (*People v. Tully*, *supra*, 54 Cal.4th at p. 979; see also *In re Edgerrin J.*, *supra*, 57 Cal.App.5th at p. 759.)

consent to justify a warrantless search or seizure, it bears the 'burden of proving that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority."].)  Rather, Mr. H. searched the backpack, not pursuant to J.V.'s consent, but because Mr. H. had reason to suspect that J.V. had a vape smoking pen in the backpack after Mr. H. saw the vape charger in plain view  in the front pocket of the backpack, after J.V. voluntarily opened the front pocket to show Mr. H. that he did not have a phone or recording device.

## IV.  DISPOSITION

The judgment of the juvenile court is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS              
J.

We concur:


MILLER              
      Acting P. J.


CODRINGTON          
      J.